**FIREMAN'S FUND INSURANCE COMPANY, Appellant,**

v.

**Lillian BENNETT, Lawrence Bennett and Government Employees Insurance Company, Appellees.**

Court of Appeals of Kentucky.

Aug. 14, 1981.

Kenneth H. Baker, James S. Scroghan, Louisville, for appellant.

Reford H. Coleman, Ginny M. Hamm, Elizabethtown, Joseph Fineman, Louisville, for appellees.

Before GANT, GUDGEL and VANCE, JJ.

VANCE, Judge.

The question presented is whether an insurance carrier which has paid basic reparations benefits pursuant to the Motor Vehicle Reparations Act has a right to recover its payments from a tortfeasor causing the injury for which payments were made by an action for indemnity independently of the right of subrogation afforded by KRS 304.39–070.

Floyd W. Bennett was injured when the automobile he was operating collided with a vehicle owned and operated by Lillian Bennett. He has been paid basic reparation benefits by Fireman's Fund Insurance Company, his insurance carrier, in excess of $9,000.00.

He instituted this action against Lillian Bennett and her husband, Lawrence Bennett, to recover for permanent injuries and pain and suffering.

The claim against Lawrence Bennett was asserted under the family purpose doctrine. It was conceded at oral argument that the automobile operated by his wife was owned and maintained by her and that the dismissal of the action as to him was proper.

Fireman's Fund intervened and claimed the right to recover the amount it had paid in reparation benefits from Government Employees Insurance Company, the insurance carrier of the defendant Lillian Bennett. It also asserted a right of common law indemnity to recover from Lillian Ben-

nett as the person responsible for causing the injury.

Lillian Bennett was covered by a liability insurance policy with a $10,000.00 limit of liability issued by Government Employees Insurance Company. The claim of Floyd Bennett against Lillian Bennett was settled for the full amount of the policy limits. After the settlement, which exhausted all of the available insurance coverage, the trial court dismissed the claim of Fireman's Fund summarily.

Fireman's Fund asserts two principal grounds for reversal of the judgment.

It concedes that KRS 304.39–070(3)(4), and KRS 304.39–140(3) limit subrogation recovery to the amount of bodily liability insurance coverage available and give to the injured person a priority for recovery for his injuries not compensated for by the reparations benefits. Thus, if Floyd Bennett is entitled to recover $10,000.00 for his injuries over and above the basic reparations benefits he has received, the $10,000.00 recovery will consume all of the available liability coverage and the reparations obligor will be denied any subrogation under the statute.

█ Fireman's Fund contends, however, that an issue of fact exists as to whether Floyd Bennett could have recovered $10,000.00 for his injuries and contends this question should have been submitted to a jury. It cites no decision supporting this contention and we reject it.

The claim of Floyd Bennett against Lillian Bennett greatly exceeded the liability coverage. If Lillian Bennett and her insurance carrier reasonably agreed that the claim of Floyd Bennett had a value which was equal to or exceeded the coverage available and that it was in their best interest to settle the claim for the full amount, they should have freedom to effect the settlement. If the basic reparations obligor is permitted to frustrate settlement with a demand that the amount of the injured claimant's damages be submitted to a jury, rather than be disposed of by settlement, then the tortfeasor, whose liability could be settled within his policy limits, must run the risk of a judgment against him in excess of his insurance coverage.

The second contention of Fireman's Fund is that even if it cannot recover through subrogation under KRS 304.39–070, it nevertheless is entitled to recover its reparations payments by indemnity against the wrongdoer who caused the injury. It contends that KRS 304.39–070 limits the right of subrogation, but does not in any way abolish the right of indemnity.

In a long line of cases our Courts have held that a person who is exposed to liability without fault on his part and is compelled to pay damages on account of the negligence of another, may recover the amount it expended from the person who caused the injury under the right of indemnity. *Ruby Lumber Co. v. K. V. Johnson Co.*, 299 Ky. 811, 187 S.W.2d 449 (1945); *Whittenberg Eng. & Const. Co. v. Liberty Mut. Ins. Co.*, Ky., 390 S.W.2d 877 (1965).

In workmen's compensation cases the right of indemnity has been held to exist independently of the subrogation provided by statute. In *Ruby Lumber Co. v. Johnson, supra*, it was stated that nothing in the statute proscribed the right to proceed at common law independent of the subrogation provisions of the statute.

█ The Motor Vehicle Reparations Act limits the recovery of a reparations obligor to the methods provided within the statute. *Progressive Cas. Ins. Co. v. Kidd*, Ky., 602 S.W.2d 416 (1980). We believe one of the purposes of the act was to provide speedy settlement of claims and to do away with litigation in cases where damages do not exceed the threshold limits by making the basic reparations obligor solely responsible for payment of loss. The indemnity theory asserted by appellant, if sustained, would open the door to an action for indemnity for every basic reparations payment caused by negligence of a third party whether or not the threshold limits are exceeded.

The appellant contends further that if the Motor Vehicle Reparations Act abol-

ishes the right of indemnity of the basic reparations obligor, it is unconstitutional because our Courts have consistently held that the legislature may not abolish a right of action which existed at common law when our constitution was adopted. Ky. Const. §§ 14 and 54. *Saylor v. Hall*, Ky., 497 S.W.2d 218 (1973); *Fann v. McGuffey*, Ky., 534 S.W.2d 770 (1975); *Kentucky Util. Co. v. Jackson County R. E. Coop. Corp.*, Ky., 438 S.W.2d 788 (1968).

It is not clear that the facts of this case give rise to a true action for common law indemnity. At common law, indemnity arose between joint tortfeasors in favor of a tortfeasor who was secondarily liable (to recover damages he was required to pay an injured person) against the tortfeasor primarily liable. *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 311 Ky. 396, 224 S.W.2d 165 (1949); *Nally v. Boop*, Ky., 428 S.W.2d 607 (1968).

■ The indemnity asserted here does not arise from a joint tortfeasor relationship. Fireman's Fund was not a tortfeasor and its payments to Floyd Bennett were not made to him because of negligence, either primary or secondary, on its part. Its payments were required by contract. Although it has often been held that such payments made as a result of the wrongdoing of another will give rise to an action for indemnity, we are not cited any case which actually holds that this form of indemnity implied from contract existed at common law before the adoption of our constitution. If it did not exist before the adoption of the constitution, it can be abolished by the legislature without violation of Sections 14 and 54 of the constitution.

It is true that the Court referred to this type of indemnity in *Ruby Lumber Co. v. Johnson, supra,* as a common law right of indemnity, but that precise question was not presented or decided and we note there was no real issue of the constitutionality of the abolition by statute of a common law right of action because the statute as construed was held not to intend abolition of the common law action.

The Motor Vehicle Reparations Act has been held constitutional in *Fann v. McGuffey, supra,* upon the theory that one who uses the highways of the state impliedly consents to be bound by the statute. This applies even to infants and incompetent persons incapable of consent. As our Supreme Court stated, at page 778:

> The argument that a parent waives his child's right to sue by failing to exercise the right of rejection for him misses the point that it is the child's act in using an automobile, or the parent's act in causing or permitting him to do so, that subjects him to the limitations imposed by the no-fault law. As expressly stated in KRS 304.39–060(1), implied consent to the law hangs on one's use of the highways, not on the failure to reject, which really is in the nature of an added attraction.

■ The insurance industry is heavily regulated by statute and a certificate is required to do business within the state. It is not unreasonable to hold that an insurer who elects to do business in the state also impliedly consents to be bound by the statutes regulating the industry.

The judgment is affirmed.

All concur.