Ann C. STOVALL, Appellee,

v.

Clifton J. FORD and Home Insurance
Company, Appellees.

and

Clifton J. FORD, Appellant,

v.

Ann C. STOVALL and Home Insurance
Company, Appellees.

Supreme Court of Kentucky.

Nov. 23, 1983.

Louis V. Mangrum, Mayfield, for appellant/appellee, Stovall.

David C. Booth, Paducah, for appellant/appellee, Home Ins.

Jonathan Freed, Paducah, for appellee/appellant, Ford.

LEIBSON, Justice.

Ann C. Stovall, plaintiff below, filed a negligence action against Clifton J. Ford, alleging she was injured in an automobile collision in Mayfield, Kentucky on November 28, 1977.

After controverting the allegations of the complaint, in the *seventh* defense in Ford's Answer, Ford alleged that "in consideration of the sum of $420.00" Stovall had "released and discharged" Ford "from any and all liability."

Approximately five months later Ford moved for summary judgment. He filed a copy of a release, styled "Release of All Claims," and of a settlement check for $420.60 as exhibits in support of his motion for summary judgment.

Ford carried liability insurance with American Hardware Mutual Insurance Co. A claims adjuster for American Hardware Mutual, W.H. Brooks, had contacted Stovall on December 2, 1977, four days after the accident, given her the check for $420.60 and obtained the release.

Stovall filed a response to the motion for summary judgment alleging that the release was obtained by "fraud," stating "that she signed the purported Release . . . upon the representation of the adjuster . . . that same was for the sole purpose of repairing her automobile and was not in settlement of any claim after she had informed the adjuster that she did not have her glasses and could not read the document." She filed her sworn affidavit in support of these allegations.

The adjuster filed his counter-affidavit admitting that "Stovall furnished him with an estimate of the costs of repairs" and "inquired as to the source of payment for any medical bills," but denying "any false statements, misrepresentations, or deceptive remarks." The adjuster further admitted that he "advised plaintiff Stovall that she should turn any medical bills in to her no-fault carrier for payment under the PIP provisions."

While the motion for summary judgment was pending Home Insurance Co., Stovall's "PIP" carrier, filed a motion to intervene in the action accompanied by a complaint alleging payments to Stovall of $10,000 in basic reparations benefits and seeking repayment from Ford and his liability insurer, American Hardware Mutual.

Ten months after Home Insurance filed its motion to intervene, the trial court entered summary judgment against Stovall on grounds that Stovall "was under a duty to read the contract or release before signing it." Another year passed and the trial court then ruled against Home Insurance Company's motion to intervene. Both Stovall and Home Insurance Company appealed the final judgment.

The Kentucky Court of Appeals affirmed the summary judgment dismissing Stovall's complaint but reversed the judgment against Home Insurance Company "with directions to grant (Home's) motion to intervene and for further proceedings on the intervening complaint."

Stovall appeals the summary judgment against her. Ford and American Hardware Mutual appeal from the decision ordering the trial court to grant Home Insurance Company's motion to intervene.

We reverse the grant of a summary judgment against Stovall and affirm the order directing that the motion to intervene be sustained.

The trial court relied on *Trevathan v. Tesseneer*, Ky., 519 S.W.2d 614 (1975), in sustaining the motion for summary judgment against Stovall. *Trevathan* involved an attempt to invalidate a release based not on fraud but on mutual mistake regarding the extent of plaintiff's injuries. In *Trevathan* the court states:

"Since the record is devoid of any indication of fraud, overreaching, or physical impairment at the time of execution, the simple question becomes whether the release is final and binding according to its terms or whether it may be invalidated

on the ground of mutual mistake as to the nature and extent of Miss Trevathan's injuries." 519 S.W.2d at 615.

*Trevathan* represents the class of cases "where the terms (of the release) are unambiguous and unequivocal, the releasor was capable of reading and understanding the release, and there is no evidence of fraud." 519 S.W.2d at 615.

But in *Schlachter v. Henderson's Adm'r,* 259 Ky. 759, 83 S.W.2d 491 (1935), we upheld the decision of the trial court to set aside a release from an automobile accident claim where there was evidence of fraud and the jury so found. We stated that while "a court will not interfere with legitimate business transactions merely because one of the parties through folly or improvidence may sustain a loss in bargaining, ... (the court) will lay hold on the slightest circumstances of deception and fraud to set aside and annul a contract where there is an unconscionable want of consideration." 83 S.W.2d at 496.

Later cases in which general releases from automobile accident claims were set aside on grounds of fraudulent misrepresentation include *People's Central Transit Lines v. Myers,* 267 Ky. 277, 102 S.W.2d 21 (1937), *Toppass v. Perkins' Adm'x,* 268 Ky. 186, 104 S.W.2d 423 (1937) and *McGregor v. Mills,* Ky., 280 S.W.2d 161 (1955).

■ The statements in Stovall's response to the motion for summary judgment and in her affidavit filed therewith, if believed, support setting aside the release on grounds of fraud.

Factors bearing on whether fraud is proved in the circumstances include the extent to which the sum paid is "probably inadequate (*Toppass, supra*)" and the extent which the evidence produced by the party claiming fraud is "clear, unequivocal and convincing (*McGregor, supra*)." These considerations remain for the trial of the cause. Suffice it to say that for purposes of summary judgment, the allegations of the plaintiff's response to the motion for summary judgment and the plaintiff's affidavit in support of the response are sufficient that summary judgment is inappropriate.

■ The Court of Appeals held that Stovall could not properly allege fraud for the first time in response to the motion for summary judgment when she had not done so previously, citing CR 9.02 and *Johns v. Kubaugh,* Ky., 450 S.W.2d 259 (1970).

But a close look at the Civil Rules fails to establish any grounds for requiring Stovall to plead fraud earlier in the case. Stovall's cause of action was for damages for personal injuries caused by Ford's negligence. At that point, according to Stovall, she was unaware that she had signed a paper purporting to be a release.

Ford alleged a release as one of the defenses in his answer. Our rules do not provide for the plaintiff to respond to the allegations of the defendant's answer, even if it contains an affirmative defense. CR 7.01. On the contrary, CR 8.04 provides that such "averments" in the answer "shall be taken as denied or avoided."

CR 9.02 requires that "averments of fraud ... be stated with particularity." The response to the motion for summary judgment was the first point in the case where Stovall was required to challenge the release, and at that point she complied with CR 9.02 by alleging fraud and stating the circumstances constituting fraud with particularity.

*Johns v. Kubaugh, supra,* is not applicable. In *Johns* the plaintiff challenged the release for the first time *after* summary judgment had been entered, and even then only with an affidavit that was insufficient on its face, alleging only "that the insurance adjuster did conceal from the Plaintiff the fact that if she accepted the money for her property damage that she *might* be releasing the insurer of all personal injury claims." 450 S.W.2d at 261. Under the facts of the present case Stovall alleged express misrepresentations and further complied with the requirements that she plead fraud both seasonably and with particularity.

■ Stovall has also alleged "estoppel" citing post-release letters from Ford's insurer discussing exchange of medical information with a view towards settlement. Assuming the release was not fraudulently obtained in the first instance, this correspondence does not provide the elements necessary for estoppel. If these documents have evidentiary value in this case, it is in substantiation of Stovall's claim that she was initially told that the payment to her was only to enable her to get her car repaired.

■ We now turn to the question of Home Insurance Company's motion to intervene. Home had a statutory right to join as a party in an action commenced by its insured to whom it had paid basic reparations benefits. KRS 304.39–070(3). Under KRS 304.39–070(2) the reparation obligor is "subrogated to the extent of its obligations to all of the rights of the person suffering the injury ..." Having set up the existence of its statutory subrogation by its motion to intervene and intervening complaint, its statutory right to intervene could not be defeated by the trial court's failure to act on the motion to intervene.

American Hardware Mutual suggests that if the release from Stovall was a valid defense to her claim, then we should consider the law suit a nullity in which Home had no right to intervene; that Home Insurance Company should have filed a parallel procedure for arbitration pending a decision on its right to intervene in this action. Such a rule would be harsh and unsound. Home's rights are protected by the existence of the case at the time it sought to intervene.

CR 24.01 provides "Upon timely application anyone shall be permitted to intervene in an action (a) when a statute confers an unconditional right to intervene, ..." Even though a party has a statutory right to intervene, procedurally CR 24.03 requires the party to file a motion. When the trial court ultimately denied the intervention, such denial was an abuse of discretion. There is no question here as to the timeliness of the application for intervention.

*Gray v. State Farm Mutual Automobile Ins. Co.*, Ky.App. 605 S.W.2d 775 (1980), relied on by the trial court, does not require a different result. We agree with the Court of Appeals that the statement in *Gray* that "if the injured party is not successful, then the reparation obligor cannot recover," can only refer to an adverse determination of the issue of tort liability. Such is the nature of statutory subrogation under the Motor Vehicle Reparations Act. If the insured's action is dismissed without a determination of tort liability on other grounds, an insurer's intervening action is not perforce rendered untenable. In *Progressive Casualty Ins. Co. v. Kidd*, Ky. 602 S.W.2d 416 (1980), we held that the insurance company is "the only real party in interest with regard to BRB, (and) is the only party which may be awarded damages to the extent of BRB." 602 S.W.2d at 418.

Stovall's rights to those elements of damages covered by basic reparations benefits were abolished by KRS 304.39–060(2)(a). As reparations obligor, Home Insurance was the real party in interest with regard to such benefits and the only party who could give the tortfeasor and his insurer a release for elements of damages covered by basic reparations benefits. Home Insurance was the only party with power to release its rights to subrogation. Stovall had no claim against Ford for those elements of damages covered by basic reparations benefits and she cannot be said to have released Home Insurance Company's claim for the same even if it be found that she was executed a full release of her own claims. cf. *Hargett v. Dodson*, Ky.App. 597 S.W.2d 151 (1979).

■ *Fireman's Fund Ins. Co. v. Government Employees Ins. Co.*, Ky., 635 S.W.2d 475 (1982) and *Fireman's Fund Ins. Co. v. Bennett*, Ky.App., 635 S.W.2d 482 (1981), cited by American Hardward Mutual are inapposite. Those cases hold that the insurance company paying basic reparations benefits has no right of action for common law indemnity separate and apart from its subrogation as afforded by KRS 304.39–070. Therefore, when the tortfeasor and his lia-

bility insurer have exhausted the limits of coverage in the liability policy covering the tortfeasor by payment to the injured party for damages not covered by basic reparations benefits, the reparation obligor is foreclosed from proceeding further against the tortfeasor and his liability carrier. The claim of the person suffering the injury has priority over the claim of the reparations obligor.

But the facts in the present case differ from those in the Fireman's Fund cases. If it should be found on remand of this case that Stovall's release was not obtained by fraud and is binding on her, such release shall not affect Home Insurance Company's right to collect its subrogation claim assuming Home can establish tort liability against Ford. If the jury should find Ford was not liable for the accident or that Stovall did not sustain any injuries from the accident, then Home's claim is defeated. If the jury finds otherwise, Home is entitled to prevail subject only to deduction of the amount paid to Stovall and to the limits of coverage in Ford's policy with American Hardware Mutual.

The decision of the Court of Appeals affirming the summary judgment against Stovall is reversed. The decision of the Court of Appeals reversing the judgment against Home Insurance Company with directions to grant Home Insurance Company's motion to intervene and for further proceedings on the intervening complaint is affirmed. The within action is remanded to the trial court for further proceedings in conformity with this opinion.

STEPHENS, C.J., and AKER, GANT, LEIBSON and VANCE, JJ., concurring.

STEPHENSON and WINTERSHEIMER, JJ., dissenting.