OHIO CASUALTY INSURANCE
COMPANY, Movant,

v.

Paula L. RUSCHELL, Respondent.

No. 91–SC–494–DG.

Supreme Court of Kentucky.

June 4, 1992.

Mark G. Arnzen, Mary K. Molloy, Covington, for movant.

Richard G. Meyer, Deters, Benzinger & Lavelle, PSC, Covington, for respondent.

LEIBSON, Justice.

This is an action filed by Paula L. Ruschell, the insured, seeking a declaratory judgment and damages against her insurer, Ohio Casualty Insurance Company, for no-fault benefits. The benefits are described in her policy as "Personal Injury Protection (PIP)" coverage, and conform to the statutory coverage described in the Motor Vehicle Reparations Act (MVRA) as "Basic Reparations Benefits" (BRB).

Ms. Ruschell was injured in an automobile accident August 26, 1986. On August 5, 1987, she filed a negligence action against the alleged tortfeasor and his employer, who were insured by Liberty Mutual Insurance Company. They settled for $16,500.00. The question is whether she is entitled to additional payment of no-fault benefits.

Her no-fault carrier, Ohio Casualty, denies liability on two grounds, claiming:

1) The general release and indemnification/hold harmless agreement Ms. Ruschell executed to settle her tort claim effectively

released the no-fault carrier from any further liability for basic reparations benefits; and

2) Because Ms. Ruschell failed to provide notice by "certified mail" to her no-fault carrier when she filed suit on the tort claim, as now provided for in KRS 411.188, her no-fault carrier was released from any further liability. KRS 411.188 now requires this step when a party seeking to recover damages in a tort action has received "collateral source payments."

The trial court entered summary judgment for Ohio Casualty, the insurer. Ms. Ruschell appealed and the Court of Appeals reversed. We have accepted discretionary review, and we affirm the Court of Appeals for reasons that follow.

On August 5, 1988, when Ms. Ruschell filed her negligence action, the total amount her no-fault carrier was then out-of-pocket for BRB payments was very little, $45.94 for some prescriptions. At that time her medical expenses had been absorbed by workers' compensation insurance. The workers' compensation carrier had been duly notified when suit was filed against the alleged tortfeasor, and was protected when Ms. Ruschell settled her claim.

Ms. Ruschell did not file a workers' compensation claim, and the two-year period of eligibility for seeking workers' compensation benefits expired August 26, 1988. She submitted a claim for her medical bills incurred after that date to her no-fault carrier, Ohio Casualty. This claim was for $511.79 and was unpaid on December 20, 1988, when she settled with the tortfeasor and his carrier and executed a general release for $16,500.00. This present action against Ohio Casualty seeks payment for this $511.79 in medical bills, and a declaration of the right to future payment for BRB incurred up to $10,000.00. Ms. Ruschell also seeks prejudgment interest on overdue payments, costs and attorney fees, under KRS 304.39–210(2) and –220, but there are certain statutory preconditions to this liability yet to be resolved.

■ We first consider whether the general release executed by Ms. Ruschell also released her no-fault carrier, Ohio Casualty. In pertinent part the release provides that:

"The undersigned hereby releases and forever discharges Kenton County Fiscal Court and Matthew Rolfsen and all other persons, firms and corporations from all claims and demands, rights and causes of action of any kind the undersigned now has or hereafter may have on account of or in any way growing out of Personal Injuries existing or which may exist which are known or unknown to me at the present time and Property Damage resulting or to result from an occurrence which happened on or about 8/26/1986, and do hereby covenant to indemnify and save harmless the said party or parties from and against all claims and demands whatsoever on account of or in any way growing out of said occurrence or its results both to person and property."

The Court of Appeals held that *Holzhauser v. West American Ins. Co.*, Ky.App., 772 S.W.2d 650 (1989), was controlling authority in this case. In *Holzhauser*, as here, an automobile accident victim, who had settled with the tortfeasor and executed a general release, then filed suit to recover BRB from her no-fault carrier. Her insurer asserted the release of the tortfeasor as a bar to her BRB claim. The Court stated:

"We are presented with the question of whether a general release as to all persons, and all claims executed by a plaintiff [Holzhauser] to a defendant and its liability carrier [Farmers] also releases plaintiff's BRB carrier [West American] when no BRB has been paid prior to the release." *Id.* at 651.

Pointing to the clear dichotomy between Holzhauser's *contractual* claim for BRB benefits, to which she was entitled regardless of fault, and the *tort* claim covered by the general release, the court stated:

"In short, we are dealing with apples and oranges. A release as to the tortfeasor has no effect on the contractual claim." *Id.*

*Holzhauser* strikes to the heart of the issue, and resolves it properly. In *Holzhauser*, as here, the no-fault carrier relied upon a background discussion found in *Richardson v. Eastland, Inc.*, Ky., 660 S.W.2d 7, 9 (1983), of historical doctrine that "the release of one joint tortfeasor discharges all unless it is otherwise stated in the agreement," to argue that the general release executed in favor of the tortfeasor also discharged no-fault claims.

First, it is important to note that the *Richardson* case discusses the proposition in the context that this is the former common law rule found in the first *Restatement of Torts* of the American Law Institute, and the Institute adopts a *contrary* rule "in the *Restatement (Second) of Torts*, new section 885(1)." *Id.* at 9. The new rule is that a "release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them." *Id.* Thus even among joint tortfeasors, now a release of one does not discharge others unless that intention is clearly expressed by the document and the circumstances in which it was executed. The holding in *Richardson* was that the release executed by a passenger in favor of the person driving her car did not release a different party, a shopping center charged with having "negligently failed to maintain suitable traffic controls and warning devices on the premises." *Id.* at 8.

Second, as the Court of Appeals so noted in *Holzhauser*, "it would be incongruous to use *Richardson* which mitigated the harshness of the earlier common law rule regarding releases arising directly from the same transaction [i.e., joint-tortfeasors], to effectively re-establish the old rule for claims not arising directly from the same transaction [i.e., one in contract and one in tort]." 772 S.W.2d at 651.

Finally, in *Stovall v. Ford*, Ky., 661 S.W.2d 467 (1983) and *Grange Mut. Cas. Co. v. McDavid*, Ky., 664 S.W.2d 931 (1984), we took note of the manner in which the no-fault concept is structured in the MVRA: specifically, that the automobile accident victim's "rights to those elements of damages covered by basic reparation benefits were abolished by KRS 304.39–060(2)(a)"; deducing from this that the reparations obligor is "the only party who could give the tortfeasor and his insurer a release for elements of damages covered by basic reparations benefits." *Stovall, supra* at 470. Addressing the no-fault carriers' right to intervene in the tort action, the "piggyback" procedure allowed by KRS 304.39–070(3), in *Grange Mut. v. McDavid*, we stated (p. 934–35):

> "[I]ntervention as a matter of right exists here not because of a right against one of the parties to the litigation, but because a statute creates rights between two entirely separate parties and mandates that one of them can elect to add the second case to the existing lawsuit. The trial court is required by law to permit the no-fault insurer to intervene and assert a claim against the tortfeasor's insurer—to add this piggyback action to the lawsuit...."

In Kentucky, unless the accident victim has exercised the right of rejection specified in the MVRA, by statutory mandate the tort claimant has no further tort claim whatsoever for those elements of damages paid or payable under the no-fault statute. KRS 304.39–060; *Carta v. Dale*, Ky., 718 S.W.2d 126, 128 (1986). Thus, while a general release may acknowledge payment in full for all claims, present and future, which the motor vehicle victim may have against the tortfeasor or any other person who may also be liable for the tort claim, the release does not address those former elements of a tort claim now abolished by the no-fault act.

We recognize that, as a contract right, in the process of striking a bargain to pay a given amount for a release of the tort claim, an alleged tortfeasor and his liability carrier may extract as an additional consideration the release or reimbursement of no-fault obligations, but certainly this should not be inferred as the intent of the parties unless the release specifically so provides. The Kentucky Court of Appeals so held in *Holzhauser v. West Ameri-*

*can Ins. Co., supra,* and we adopt that decision in this Opinion. In recognizing a rule that a tort release will not release a no-fault claim unless there is a *specific designation* of the no-fault claim in the tort release, we are persuaded by the reasoning of the Supreme Court of Colorado in *Cingoranelli v. St. Paul Fire & Marine Ins.*, 658 P.2d 863 (Colo.1983), interpreting provisions of a no-fault act substantially similar to our own. In *Cingoranelli,* after acknowledging ...

> "the scope of a release is determined primarily by the intent of the parties as expressed in the release instrument, considered in light of the nature of the claim and the objective circumstances underlying the execution of the instrument." *Id.* at 865.

The Court states ...

> "the only similarities between Cingoranelli's tort and PIP claims are coincidental: they both arise from an automobile accident and ultimate financial liability for her PIP claims and her tort claims against [the tortfeasor] rests with one insurer, [the tortfeasor's liability insurance carrier]. In all other respects, however, her PIP claims are distinct from her tort claims in both purpose and effect." *Id.* at 868.

The Court concludes:

> "Given the statutory scheme, it is simply unreasonable to assume that an automobile accident victim executing a general tort release intends thereby to release PIP claims that are unrelated to the fault principles of tort liability. Rather, the presumed intention in such a case would be to preserve PIP claims, since the losses underlying these claims are not compensable in a tort action and, therefore, would not constitute part of any judgment that might subsequently be satisfied in that action.... We therefore hold that an automobile accident victim's general release of a tortfeasor, in the absence of a specific provision which unequivocally includes PIP claims within the terms of the release, does not operate to release an automobile insurer from

its obligation to pay PIP benefits to the injured victim." *Id.* at 869.

Other states considering the problem have adopted a similar approach: *Longman v. Travelers Insurance Company,* 371 So.2d 533 (Fla.App.1979); *Hughes v. State Farm Mutual Automobile Insurance Company,* 294 So.2d 398 (Fla.App. 1974); *Allstate Insurance Company v. Ivie,* 606 P.2d 1197 (Utah 1980).

■ Ohio Casualty contends that we should disregard the Kentucky Court of Appeals' holding in *Holzhauser v. West American Ins. Co., supra,* and the overwhelming authority supporting the insured's right to pursue her no-fault claim even though she has settled with the alleged tortfeasor and executed a general release, because the release includes an indemnity/hold harmless agreement, which provides a ...

> "covenant to indemnify and save harmless the said [released] party or parties from and against all claims and demands whatsoever on account of or in any way growing out of said occurrence or its results both to person and property."

The Court of Appeals addressed Ohio Casualty's effort to distinguish this case from *Holzhauser* based on this agreement and concluded:

> "The fallacy in this argument is that Ruschell would have no duty to indemnify the tort-feasor until Ohio Casualty pursued its subrogation rights and then, only if there is a determination of fault [citing *Stovall v. Ford, supra* at 471]. Ohio Casualty has a contractual obligation to pay Ruschell before it has any right of subrogation."

The Court of Appeals concluded that it "may be" that ultimately, after Ruschell has been paid her no-fault benefits, Ohio Casualty will be able to pursue a claim in arbitration against Liberty Mutual for the benefits so paid, and Liberty Mutual may in turn have a right to seek reimbursement from Ruschell, but ...

> "Ohio Casualty is not in a position to speculate as to the future course of events, and as a result, avoid its present

contractual obligation to pay basic reparation benefits to its insured, Ruschell."

We agree. Further, we note that *if* Ohio Casualty pays Ruschell and then proceeds against Liberty Mutual by arbitration seeking reimbursement, there are regulatory deductions in arbitration and substantive defenses which may limit or extinguish the claim.

The indemnity issue in the present case differs from the issue in *Crime Fighters Patrol v. Hiles*, Ky., 740 S.W.2d 936 (1987). That case involved an intentional assault on a restaurant patron in a White Castle parking lot, settlement with the person committing the assault, and a further action against White Castle for failing to prevent the assault. Although both *Crime Fighters Patrol* and the present case involved indemnification agreements executed as part of a tort claim settlement, similarity ends there. In *Crime Fighters Patrol*, under equitable principles of restitution the restaurant had the right of *complete indemnification* against the assailant. As a result, when the injured party agreed to indemnify his assailant as a part of his settlement with him, this agreement had the unavoidable effect of also releasing White Castle. Any payment by White Castle would inevitably have been circular. However, Ohio Casualty's no-fault payments to Ruschell in this case are not necessarily circular. The effect of the indemnification agreement in the case at hand is entirely speculative and presents no grounds for dismissing respondent's claim against Ohio Casualty for no-fault benefits.

The second issue raised by Ohio Casualty in defense of this action is Ruschell's failure to provide statutory notice to Ohio Casualty when she commenced the tort action. Ruschell contends Ohio Casualty had actual knowledge of the suit before she settled her case. Ohio Casualty relies upon a statutory right to formal notice by "certified mail," citing KRS 411.188. KRS 411.188 was *not* enacted as part of the no-fault legislation in the MVRA, or as an amendment to the MVRA. It was part of the omnibus "tort reform" legislation enacted as House Bill 551 in 1988. Ky.

Acts 1988, Ch. 224. It provides in pertinent part:

"(2) At the commencement of an action seeking to recover damages, it shall be the duty of the plaintiff or his attorney to notify, by certified mail, those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action."

The critical phrase for present purposes is, "to any award received by the plaintiff." The plain purpose of this legislation was to restrict the impact of the collateral source rule, the common law right of an injured person when pursuing a tort action to include in his claim against the tortfeasor medical expenses and lost wages for which the victim had been compensated from a collateral source. To this end KRS 411.188 provides in subsection 3:

"Collateral source payments, except life insurance, the value of any premiums paid by or on behalf of the plaintiff for same, and known subrogation rights shall be an admissible fact in any civil trial."

Here, the Court of Appeals interpreted KRS 411.188 to include a requirement of notice to the no-fault carrier, but stated it could find "no authority, statutory or otherwise, permitting the imposition of a penalty upon Ruschell [for failing to provide notice by certified mail] which would relieve Ohio Casualty of its contractual obligations to provide basic reparation benefits." Thus it was the Court of Appeals' position that there was a right to notice, but no remedy.

We need not address this seeming paradox, because we conclude that KRS 411.188 does not extend to no-fault coverage in the first instance: no-fault benefits are not "collateral source payments" in the first place. In Subsection (2) two of KRS 411.188, as quoted above, the threshold question is not just whether there has been payment for something from a collateral source, but whether the payment is for an element of damages included in the tort action. When it is, the payor must be notified, must assert its claim in the tort action, and must be paid from the proceeds

of the tort action. But the essential fact in the payment of no-fault benefits is that it is for elements of damages for which tort liability has been "abolished," *see* discussion of KRS 304.39–070(3). No-fault benefits are payments for items which will *not* be claimed in a tort action. The no-fault carrier with notice of the tort action may intervene and assert a *separate* claim, not against the tortfeasor, but against the tortfeasor's liability insurer, but this is a "piggyback" procedure rather than a part of the tort claim. *See* discussion of *Grange Mut. Cas. Co. v. McDavid, supra.*

In *Progressive Casualty Ins. Co. v. Kidd,* Ky., 602 S.W.2d 416, 418 (1980), we held that the reparations obligor is "the real party in interest with regard to the BRB, [and] is the *only* party which may be awarded damages to the extent of BRB." (Emphasis original.) In one of the earlier cases on the subject, *Hargett v. Dodson,* Ky.App., 597 S.W.2d 151 (1979), the Court of Appeals examined the contrast between BRB payments and other types of first party medical and disability insurance payments which do not affect a plaintiff's right of recovery against the tortfeasor, holding that, because the plaintiff has lost so much of her tort action as is abolished by no-fault, the traditional rule of law that permits the plaintiff to retain the right in her tort action to items of damages for which there has been payments from a "collateral source" is inapplicable.

Thus the subject matter of KRS 411.188 is a statutory change in the way "collateral source payments" are presented to the trier of fact: it requires persons who "hold subrogation rights" against the plaintiff, not only to be notified by certified mail, but "to assert subrogation rights by intervention" or *lose* "those rights with respect to any final award." It is directed at a type of benefit *different* in kind and character to BRB payments structured by the MVRA. While we do not question the right of the General Assembly to require a person receiving BRB to provide formal notice to the reparations obligor when filing a tort action for damages, and to provide for some type of protection to the reparations obligor (or reasonable penalty)

from failure to do so, there is nothing in the context of KRS 411.188 nor the circumstances in which it was enacted to suggest BRB payments are the type of payments addressed by that statute. The statute expressly limits mandatory notification to persons who "hold subrogation *rights to any award received by the plaintiff as a result of the action.*" Emphasis added. The no-fault carrier does not meet this description.

Therefore, we affirm the holding of the Court of Appeals setting aside the summary judgment entered in the trial court in favor of Ohio Casualty Insurance Company, and we remand this case to the trial court to enter a declaratory judgment for the claimant, Paula Ruschell, recognizing her right to recover no-fault benefits, and for further proceedings consistent with this Opinion.

STEPHENS, C.J., and COMBS, LAMBERT, LEIBSON, REYNOLDS and SPAIN, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the trial judge correctly concluded that the agreement to indemnify and hold harmless barred any further no-fault claims made beyond the settlement date. In addition, failure to comply with K.R.S. 411.188 prevents the recovery of basic reparations benefits in this particular situation.

Ruschell, in the settlement agreement, for consideration of $16,500, agreed to indemnify the tortfeasor and his insurance company from any additional claims or liability. Nevertheless, thereafter she sought basic reparation benefits from Ohio Casualty which had a statutory right of recovery from the insurance carrier, Liberty Mutual. Ultimately, as a result of the claim against Ohio Casualty, Liberty will be required to pay the basic reparation benefits claim and hope to receive reimbursement from the injured party.

A party against whom a civil lawsuit has been filed should be entitled to settle the

claim and permanently conclude the matter. The opinion of the majority will impede the settlement of automobile tort lawsuits because settlement will be difficult, if not impossible, particularly in small claims with marginal questions of liability. Here, by agreeing to indemnify Liberty, Ruschell indicated that she would not pursue any additional claim which would result in a claim against Liberty.

In this rather hypertechnical dispute between insurance companies and litigants, it seems that Ruschell will receive compensation from Ohio Casualty, who will obtain reimbursement from Liberty, and if possible, Liberty will seek to obtain reimbursement from Ruschell. The only thing that appears clear is that essentially the same money will travel a circular route which would seem to be directly contrary to a settlement agreement. The majority opinion will tend to encourage an increase in the delays inherent in relatively small automobile insurance matters, and it will result in a circuity of action. In sum, all of this leads to a further unnecessary complication of the already complex world of automobile insurance litigation.

I believe the circuit court was originally correct and its summary judgment should be reinstated.