**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0786n.06
Filed: October 23, 2006

**No. 04-6057**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JAMES PENNINGTON, ADMINISTRATOR FOR THE ESTATE OF ARLIS G. PENNINGTON, | ) ) ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| AMERICAN TELEPHONE & TELEGRAPH COMPANY, | ) ) ) | |
| Defendant-Appellee. | ) | |

_____

BEFORE: MERRITT, SUTTON, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

In this wrongful death action based on diversity jurisdiction, plaintiff-appellant James Pennington, Administrator for the Estate of Arlis Pennington ("the Estate"), appeals the orders of the district court granting summary judgment in favor of defendant-appellee American Telephone and Telegraph Company ("AT & T"). Dismissal of the suit was premised upon the Estate's execution of a document entitled "Release of All Claims" (the "Release"), whereby the Estate agreed, in exchange for payment of approximately $95,000, to release and forever discharge from potential liability two named parties and "all other persons, firms or corporations liable, or who might be claimed to be liable, of and from any and all actions, causes of action, [or] claims" arising

from plaintiff's decedent's fatal accident. The Estate subsequently filed this action against AT & T, claiming that AT & T's negligence contributed to the accident. AT & T was not one of the parties expressly covered by the Release. Applying Kentucky law, the district court nonetheless concluded that the plain, unambiguous language of the Release included AT & T within its scope and thus dismissed the Estate's suit against AT & T.

The Estate now appeals the grant of summary judgment in favor of AT & T, arguing that the release of persons and their potential liabilities other than the two named parties in the Release was not intended by the Estate, and that genuine issues of material fact remain regarding the intent of the parties. We affirm.

I.

On February 2, 2001, Arlis G. Pennington was seriously injured, and died several days later, after his automobile collided with two horses that escaped from Jeff Link's property and wandered onto Kentucky Highway 22 near Dry Ridge in Grant County, Kentucky. The horses allegedly broke free from their enclosure by way of a poorly maintained fence which was located on an easement owned by AT & T.

On March 29, 2001, the Estate entered into a settlement with Jeff and Vivian Link and their insurer, Kentucky Farm Bureau Mutual Insurance Company ("KFB"). Pursuant to this settlement, the Estate executed the Release, which provides in pertinent part:

RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of the payment to me/us, JAMES PENNINGTON, AS ADMINISTRATOR OF THE ESTATE OF ARLIS

PENNINGTON at this time of the sum of NINETY-FIVE THOUSAND NINE HUNDRED THIRTY-FIVE DOLLARS AND 50/100 Dollars ($95,935.50) the receipt of which is hereby acknowledged, I/we, being of lawful age do hereby release, acquit and forever discharge both JEFFREY & VIVIAN LINK and KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY or THE FB INSURANCE COMPANY, their heirs, executors, administrators, agents and assigns, *and all other persons, firms or corporations liable, or who might be claimed to be liable, of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation, or suits at law or in equity, of whatsoever kind or nature*, arising out of any and all known and unknown injuries and damages resulting or to result from an accident that occurred on or about the 3RD day of FEBRUARY of 2001 at or near HWY 22 IN DRY RIDGE, KY.

\* \* \*

Furthermore, I/we do hereby agree that in consideration of all aforesaid payments to further indemnify and forever hold harmless all persons released by this agreement, their successors, employees, agents, or principals for loss from any and all claims that may hereafter be made seeking compensation for the events described herein, specifically agreeing that I/we will pay any and all court costs, attorney's fees, and any other legal expenses in connection with the processing of such claims against all released parties.

\* \* \*

This release contains the ENTIRE AGREEMENT between the parties hereto, and all prior representations are hereby merged into this agreement.

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our free act.

\* \* \*

CAUTION!   THIS IS A RELEASE AND YOU ARE MAKING A FINAL SETTLEMENT.   READ CAREFULLY BEFORE SIGNING!!!!

(Emphasis added).

On October 31, 2001, the Estate and Jeff Link filed a joint complaint against AT & T in the Kentucky circuit court. The Estate's wrongful death action alleged that, because AT & T did not properly maintain the fences and gates on their easement on the Link property, the horses were able to escape and enter the roadway.[1] Some years earlier, AT & T had obtained the easement across the Link property for purposes of operating and maintaining communication lines.

AT & T removed the action to federal court based upon diversity jurisdiction. Thereafter, AT & T was granted leave to file a third-party complaint and to add as third-party defendants Cannon Construction, the company which constructed and repaired the fence for AT & T, Cannon's successor First South Utility Construction Company, and Cannon's insurer, One Beacon Insurance Company.[2] AT & T also filed a counterclaim against Jeff Link for indemnification and/or contribution.

The defendants filed motions for summary judgment, arguing that the Release entered into by the Estate barred any claims against them arising out of the accident. The Links and the Estate argued that the Release was valid only for potential claims regarding the Links' and KFB's liability. In an opinion and order dated March 31, 2004, the district court granted summary judgment in favor

---

[1]Jeff Link asserted a claim for the loss of his two horses, which had to be euthanized following the accident.

[2]AT & T acknowledged that in 1961 it entered into a written easement agreement with a predecessor in the Links' chain of title. In 1996, AT & T purportedly determined that it no longer needed the communications cable over the Link property and contracted with Cannon to remove it. Cannon did so, and Link allegedly executed a release in connection with the cable's removal. AT & T claims that no AT & T corporate agents or representatives have physically entered the Link property since at least 1997.

of all defendants, including the third-party defendants, as to all claims by the Estate. The court determined that, under Kentucky law, the Release was not limited only to those parties identified by name in light of the express language of the document releasing "all other persons, firms and corporations." The district court further held that Kentucky law did not require the examination of extrinsic evidence regarding the Estate's intent when it executed the Release because the Release was unambiguous on its face.

On May 20, 2004, the district court entered an order denying the Estate's subsequently filed motion for reconsideration. On July 28, 2004, another order was issued, disposing of the remaining third-party claims and counterclaims. The district court entered a final judgment dismissing the entire case on September 3, 2004.

The present timely appeal was taken by the Estate only as to the summary judgment granted in favor of AT & T.[3] In its sole appellate issue, the Estate argues that the purpose of the Release was to settle potential liability issues between the Estate and the Links and KFB, not AT & T. The Estate argues that AT & T was not a party to the settlement negotiations and that the Release clearly did not discharge any other party other than those specifically named, i.e., the Links and KFB. The parties waived oral argument.

II.

---

[3]As stated in its Notice of Appeal, the Estate is appealing all four of the district court's orders. However, the issue raised in this appeal was decided in the March 31, 2004, order.

This court reviews a district court's grant of summary judgment de novo. *Cont'l Ins. Co. v. Adams*, 438 F.3d 538, 540 (6th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). A dispute over a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). In deciding the propriety of a motion for summary judgment, this court views all evidence in the light most favorable to the nonmoving party. *Id.* "To survive a motion for summary judgment, the non-moving party must present evidence creating more than a 'metaphysical doubt as to the material facts.'" *Liberty Mut. Fire Ins. Co. v. Massarone*, 326 F.3d 813, 815 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Summary judgment may therefore be granted when "'a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.'" *Id.* (quoting *Howard v. City of Beavercreek*, 276 F.3d 802, 805 (6th Cir. 2002)).

Because this case is in federal court pursuant to the diversity statute, 28 U.S.C. § 1332, this court applies the law of the forum state. *Himmel*, 342 F.3d at 598. Thus, the substantive law of Kentucky governs this case. In diversity cases, this court applies state law in accordance with the controlling decisions of the state supreme court, and, if that court has not yet addressed the relevant issue, this court must predict how the court would rule by looking at all the available data. *Allstate Ins. Co. v. Thrifty Rent-A-Car Systems, Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). "'Relevant data

include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state supreme court] would decide otherwise.'" *Id*. (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc*., 65 F.3d 498, 507 (6th Cir. 1995)).

III.

Until 1983, the Kentucky courts followed the rule set forth in *Kingins v. Hurt*, 344 S.W.2d 811 (Ky. 1961), that the release of one party releases all unless the right to make further claims is expressly reserved. *Id.* at 812 ("[T]he written instrument should be construed to mean what it says, and unless on its face it can fairly be interpreted as reserving the claimant's rights against other tortfeasors it will be treated as an unconditional release."). In so holding, the *Kingins* court adopted the position taken in the first edition of the RESTATEMENT OF TORTS § 885(1), to the effect that the release of one joint tortfeasor discharges all, unless it is otherwise stated in the agreement.

However, in *Richardson v. Eastland, Inc.*, 660 S.W.2d 7 (Ky. 1983), the Kentucky Supreme Court expressly overruled *Kingins*, noting that, in 1977, the American Law Institute redrafted § 885(1) and modified the former rule because it frequently resulted in the unintended discharge of a tortfeasor and was not consistent with the "modern" view of the scope of releases. 660 S.W.2d at 9. The RESTATEMENT (SECOND) OF TORTS § 885(1) (1977) now provides that "[a] valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them." *Id*. The *Richardson* court, noting the contractual nature of a release and the need to interpret the intent of the parties where a contract is silent, *id*. at 8, concluded that the new Restatement rule better accommodates the intentions of the

parties to a release. The *Richardson* court thus adopted the revised § 885(1) "as the rule of the Commonwealth [of Kentucky]" and held that:

> Unless the release shows on its face that others not mentioned in the release are also released or that the claimant has been fully compensated for all damages and the release constitutes payment in satisfaction of all claims, the release shall not be interpreted as providing a defense to a third party not expressly covered.

*Id*. at 9.

In *Richardson*, the plaintiff, a passenger in her daughter's car, was injured in an automobile collision that occurred on the premises of a shopping center. *Id*. at 8. The plaintiff signed a release in favor of her daughter, but subsequently brought suit against the shopping center owner, alleging that the owner negligently failed to maintain suitable traffic controls and warning devices on the premises. *Id*. The release in *Richardson* operated to "release and forever discharge . . . [the daughter] of and from all claims, damages, actions, causes of action, known or unknown, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done" by the daughter. *Id*. The Kentucky Supreme Court reversed the summary judgment granted in favor of the defendant on the basis of the release. *Id*. at 9. The *Richardson* court noted, on the one hand, that the release was not a general release; it neither specified that the plaintiff had been fully compensated for her injury nor purported to operate in favor of other unnamed persons. *Id*. at 8. On the other hand, the release did not expressly reserve the right to make further claims against unnamed, potentially liable, parties. *Id*. Under the circumstances, the *Richardson* court concluded that reversal and remand was warranted pursuant to the revised version of § 885(1). *Id*. at 9.

In 1988, the holding of *Richardson* was codified by the Kentucky General Assembly at KY.

REV. STAT. ANN § 411.182(4), which provides in pertinent part:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides.

While the Estate and AT & T agree that the general rule in *Richardson*, as codified in

§ 411.182(4), governs this case, they disagree as to whether an alleged tortfeasor may be released

under that section when it is not specifically identified by name in the release. The Estate and

AT & T also disagree as to whether the intent of the releasor can be evidenced from the face of the

release alone or whether the intent of the releasor must be demonstrated through extrinsic evidence.

The Estate argues that the enactment of KY. REV. STAT. ANN § 411.182(4) demonstrates that

Kentucky has a strong presumption against the release of parties not identified in a release document.

However, § 411.182(4) does not specifically state that a party must be identified by *name* to be

covered by the release, and cases interpreting *Richardson* and the statute subsequent to its enactment

have not imposed such a requirement.

In *Ellington v. Brown Bros., Inc.*, 940 F.2d 659, 1991 WL 153068 (6th Cir. 1991)

(unpublished table decision), this court addressed the effect of two identical releases executed in

Kentucky in settlement of a wrongful death action. The general releases discharged the named

tortfeasor, as well as "his heirs, executors, administrators, agents and assigns, and all other persons,

firms or corporations liable or, who might be claimed to be liable, none of whom admit any liability

to the undersigned. . . ." *Ellington*, 1991 WL 153068 at *1. The releases further provided that the

terms of the settlement constituted "a full and final compromise adjustment and settlement of any

and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and

for the express purpose of precluding forever any further or additional claims arising out of the

aforesaid accident." *Id.* This court, acknowledging § 411.182(4) and the *Richardson* decision,

affirmed summary judgment in favor of two parties sued by the plaintiff for wrongful death, but not

explicitly named or discharged by the releases. We stated:

> We find the district court correctly interpreted KY. REV. STAT. ANN. § 411.182(4) to
> be a codification of *Richardson*, and therefore hold that because the releases signed
> by [the plaintiff] are on their face unambiguous as to the fact that she "has been fully
> compensated for all damages and the release[s] constitute[] payment in satisfaction
> of all claims," under Kentucky law her claims are barred, *Richardson*, 660 S.W.2d
> at 9, particularly in light of [the plaintiff's] acknowledgment that the releases
> discharged not only [the named tortfeasor], but "all other persons, firms, or
> corporations [who are] liable or, who might be claimed to be liable. . . ." [The
> plaintiff's] attempt to introduce evidence as to the subjective intent of the parties
> contradicts the unequivocal language of the releases and therefore is parole evidence
> which cannot be considered.

*Ellington*, 1991 WL 153068 at *2.

In *Conner v. Greathouse*, 28 F.App'x 492 (6th Cir. 2002) (unpublished), this court again

applied Kentucky law in holding that a general release barred the plaintiff's personal injury claims

against the defendant, not named in the release. In an abbreviated opinion, we affirmed judgment

in favor of the defendant, stating:

> In this personal injury case brought as a result of an auto accident . . . the plaintiff
> . . . signed a document entitled "Release of All Claims" acknowledging receipt of
> $100,000 in exchange for releasing "all actions, claims and demands whatsoever, that
> now exist, or may hereafter accrue" against three named parties and their "agents."
> The Release then continues and releases "any other person, corporation, association
> or partnership charged with responsibility for injuries to the person and property" of

> the plaintiff arising from the accident. Six months later, plaintiff sued the defendant in this case for his injuries arising from the same accident.
>
> We agree with the District Court that the . . . release bars this action under Kentucky law. Kentucky Revised Statutes 411.182(4) and *Richardson* . . . make it clear that when such a release bars actions that may "now exist" or "hereafter accrue" against named parties and "any other person . . . charged with responsibility" for the injury, the release is not limited to the named parties.

*Conner*, 28 Fed. App'x at 493.

In the most recent decision on this topic, issued after the district court rendered its opinion in the instant case, the Kentucky Court of Appeals, in *Abney v. Nationwide Mut. Ins. Co.*, No. 2003-CA-002013-MR, 2004 WL 2260323 (Ky. Ct. App., Oct. 8, 2004) (unpublished), review granted (Aug. 17, 2005), held that the plaintiff's execution of a general release concerning one driver involved in an auto accident operated as a bar to a subsequent claim for damages against the defendants, the owner and operator of the other vehicle. The release at issue discharged the named tortfeasor and her insurance company, and "all other persons, firms or corporations liable, or who might be claimed to be liable, of and from any and all actions, causes of action [and] claims" arising out of the accident. *Id.* at *1. Despite the plaintiff's claim of mutual mistake, the trial court granted summary judgment in favor of the defendants, finding that any mistake was unilateral and, pursuant to *Richardson*, the signing of the general release relieved the defendants from any liability to the plaintiff. *Id.* The Kentucky Court of Appeals affirmed, stating:

> We view this release as falling within the criteria established in [*Richardson*] as clearly "show[ing] on its face that others not mentioned in the release are also released. . . ." Contrary to appellant's contention, nothing in the language of KRS 411.182(4) alters this result. The statute merely codifies [*Richardson's*] requirement that in order to discharge unnamed persons and entities from liability, the release

must clearly evidence intent to do so. A review of the plain terms of the document reveals that it fully comports with both the statutory and caselaw requirements concerning discharge of unnamed parties. We are thus in complete agreement with the trial court that appellant is bound by the terms of his agreement unless he can demonstrate that its terms should be modified on the basis of mutual mistake [of fact]. And, as specifically found by the trial court, appellant cannot meet that burden.

*Id.* at *2 (footnotes omitted).[4]

We are cognizant of the fact that the Kentucky Supreme Court has granted discretionary review in *Abney*, which is currently pending before the court. However, the time frame for the release of the court's decision in that case and, obviously, the substance of that decision, is uncertain.[5] We therefore must predict how the court would rule by looking at all the available data, including the decisions of the state appellate courts. *Allstate Ins. Co.*, 249 F.3d at 454. Such decisions should not be disregarded unless this court is presented with persuasive data that the state supreme court would decide otherwise. *Id*. We review de novo the district court's determinations of state law. *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 526 (6th Cir. 2006) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991)).

---

[4]One judge on the *Abney* panel dissented, maintaining that when read together, *Richardson* and the statute clearly disfavor the conclusion that a general release executed as part of a settlement with one party operates as a release of all liable parties, named or unnamed. *Abney*, 2004 WL 2260323 at *3. The judge "would go further, holding that a general release of one party can only operate as a release of all parties if it names the parties being released or if it clearly explains the extent of the rights being released." *Id.* Because the release in question did not name the defendants or specify that the settlement was in full satisfaction of any and all claims, the dissenting judge opined that the release therefore did not operate to benefit the defendants.

[5]We note that neither party in the instant case has sought certification to the Kentucky Supreme Court.

Here, the district court acknowledged that courts of other jurisdictions, when faced with the present issue, have reached differing conclusions.[6] The district court nonetheless concluded, based on its review of available precedent, including *Richardson*, *Conner*, *Ellington*, and also KY. REV. STAT. ANN. § 411.182(4), that Kentucky law does not require that a third party or other tortfeasor actually be identified by name in a general release in order to be discharged from liability and that the Estate's Release effectively discharged AT & T:

> [T]he two unreported Sixth Circuit decisions [*Conner* and *Ellington*] are the closest reasoning on point, given that there has been no Kentucky Supreme Court decision on this specific issue. The Estate has not pointed to any authority requiring that the subjective intent of the contracting parties must be explored in the circumstances here, where the particular excerpt of the release is not ambiguous. Therefore, exploring any factual issues in this regard is unnecessary. Without any ambiguity, the Court is restricted to looking to the four corners of the document only. The language within those four corners provides for a release of "all other persons, firms or corporations liable, or who might be claimed to be liable," which would include AT & T.

---

[6]The district court took note of a relevant annotation surveying the case law on this issue compiled by Anne M. Payne, Annotation, *Release of One Joint Tortfeasor as Discharging Liability of Others Under Uniform Contribution Among Tortfeasors Act and Other Statutes Expressly Governing Effect of Release*, 6 A.L.R. 5th 883 (1992). The annotation suggests that there are three main schools of thought that have emerged in the courts regarding the scope of general releases: (1) the "absolute" view, whereby the release of one joint tortfeasor constitutes a release of all; (2) the "intent" rule, whereby a boilerplate discharge does not have the effect of automatically releasing unnamed tortfeasors; instead, the release will be so interpreted only if and to the extent that the parties so intended; and, (3) the "specific identity" approach, whereby the release of one tortfeasor does not discharge other tortfeasors unless the latter are named in the release or are otherwise specifically identifiable from the face of the instrument. *See Moore v. Missouri Pac. R.R.*, 773 S.W.2d 78, 80 (Ark. 1989) (discussing these three views).

We agree.  As noted by the district court, Kentucky has adhered to a longstanding rule that parol or extrinsic evidence of intent is not admissible unless an ambiguity is found in the document. The Kentucky Supreme Court summarized this rule in *Island Creek Coal Co. v. Wells*, 113 S.W.3d 100, 104 (Ky. 2003):

> [W]e must first determine whether the terms of the parties' settlement agreement are ambiguous because our resolution of the ambiguity question will dictate how our interpretive analysis will proceed.  If an ambiguity exists, "the court will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written," by examining extrinsic evidence as to the parties' intentions.  However, "[i]n the absence of an ambiguity a written instrument will be enforced strictly according to its terms," and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.

113 S.W.3d at 104 (quoting *Frear v. PTA Industries, Inc.*, 103 S.W.3d 99, 105-06 (Ky. 2003)).

Thus, "[a]bsent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence."  *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).  *See also Ellington*, 1991 WL 153068 at *2 ("[The plaintiff's] attempt to introduce evidence as to the subjective intent of the parties contradicts the unequivocal language of the releases and therefore is parole[sic] evidence which cannot be considered").  "The criterion in determining the intention of the parties is not what did the parties mean to say, but rather the criterion is what did the parties mean by what they said. An ambiguous contract is one capable of more than one different, reasonable interpretation." *Central Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981).

Applying these principles, the district court appropriately rejected the Estate's efforts to require the consideration of extrinsic evidence of the parties' intent in entering into the Release.[7] Further, the court properly determined that the Release is, on its face, unambiguous and unequivocal in its discharge of all claims, including those against AT & T.

Unlike the partial release in *Richardson,* which was limited to a specified person and did not purport to operate in favor of other unnamed persons, the Release executed by the Estate is a general "RELEASE OF ALL CLAIMS," which by its express terms clearly and unequivocally releases the Links and KFB, as well as "their heirs, executors, administrators, agents and assigns, and all other persons, firms, or corporations liable, or who might be claimed to be liable" from all claims arising

---

[7]As noted previously, *Richardson* directs the courts to consider what the release "shows on its face" to determine whether a party is subject to the release. *Richardson*, 660 S.W.2d at 9. The Estate maintains that *Ohio Cas. Ins. Co. v. Ruschell*, 834 S.W.2d 166 (Ky. 1992)*,* modifies *Richardson* and now requires that the intent of the parties be shown through extrinsic evidence. In *Ruschell*, the Kentucky Supreme Court held that "a tort release will not release a no-fault claim unless there is a *specific designation* of the no-fault claim in the tort release[.]" *Id*. at 169. The *Ruschell* court took note of the *Richardson* decision, commenting upon the rule change with regard to releases effected by *Richardson* and observing that "now a release of one does not discharge others unless that intention is clearly expressed by the document and the circumstances in which it was executed." *Id*. at 168. The Estate seizes upon this language, arguing that the circumstances surrounding the execution of a release must be examined before a determination can be made as to whether the release discharges unnamed parties.

We agree with the district court, however, that when reviewed in the context of the rest of the *Ruschell* decision, this language does not alter the holding in *Richardson*. The district court pointed out that *Ruschell* addressed a different, narrow issue – whether a no-fault insurance claim was barred by a release which addressed only tort claims – and thus is distinguishable because it focused on the type of claim to be released rather than which parties were released, as was the case in *Richardson*. Consequently, the *Ruschell* court's commentary on *Richardson* was merely dicta which did not modify the holding in *Richardson*.

from the accident at issue. AT & T plainly falls within the category of "other persons, firms or corporations liable, or who might be claimed to be liable" and thus is discharged from liability. We agree with the district court that the Estate's argument, that the language "other persons, firms or corporations liable, or claimed to be liable" could be interpreted as a catch-all category covering any entity connected with the Links or KFB, is not a reasonable interpretation of the Release, particularly given the use of the word "and" preceding this phrase. Moreover, the Release cautions, in bold type, that "THIS IS A RELEASE AND YOU ARE MAKING A FINAL SETTLEMENT. READ CAREFULLY BEFORE SIGNING!!!!"

The district court aptly noted that the arguments posed by the Estate suggest not so much that the language of the Release is ambiguous, but rather that it simply was not intended. "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Cantrell Supply, Inc.,* 94 S.W.3d at 385. *See also Abney*, 2004 WL 2260323 at *2 ("[T]he fact that [the releasor] was under the mistaken impression that the release did not affect his claim against the [defendant] flies in the face of the clear terms of the agreement he signed and . . . represents a unilateral mistake of law," which constitutes an insufficient basis for reformation of the document to include terms contrary to the parties' agreement).

Because the analogous general releases in *Conner*, *Ellington*, and now *Abney*, have been held by the courts to effect the release of unnamed parties, the district court herein reasonably interpreted existing precedent and did not err in granting summary judgment in favor of AT & T. The Release

comports with the requirement of *Richardson* that a releasee be "expressly covered," i.e., the release must "show[] on its face that others not mentioned in the release are also released or that the claimant has been fully compensated for all damages and the release constitutes payment in satisfaction of all claims[.]" *Richardson*, 660 S.W.2d at 9. The Release likewise satisfies the statutory mandate of KY. REV. STAT. ANN. § 411.182(4) that a release "shall not be considered to discharge any other persons liable upon the same claim unless it so provides." In so holding, we reiterate that neither *Richardson* nor the statute expressly requires that a party must be identified by name to be covered by the release. Although such a requirement could be judicially grafted onto *Richardson* and the statute by the Kentucky Supreme Court, it has, to date, shown no inclination to do so.

We therefore affirm the orders of the district court granting summary judgment in favor of AT & T.