Donna TEAGARDENER, et al.,
Plaintiffs–Appellants,

v.

REPUBLIC–FRANKLIN INCORPORATED PENSION PLAN, et al.,
Defendants–Appellees.

No. 89–3865.

United States Court of Appeals,
Sixth Circuit.

Argued May 8, 1990.

Decided Aug. 6, 1990.

Michael J. Johrendt (argued), Robert A. Cunningham, Johrendt & Cook, Carl Genberg, Columbus, Ohio, for plaintiffs-appellants.

Russell A. Kelm, Juan Jose Perez (argued), Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, for defendants-appellees.

Before WELLFORD and BOGGS, Circuit Judges, and GILMORE, District Judge.[*]

BOGGS, Circuit Judge.

Plaintiffs, formerly members of the Republic–Franklin Incorporated Pension Plan (the Plan), sued the Plan and its administrators, William C. Cook, William W. Matchneer, and John F. Heller, Jr. (collectively, the Plan Administrators), to recover their proportionate shares of certain residual assets in the Plan. The district court dismissed the complaint for lack of standing, finding that the plaintiffs were no longer "participants" or "beneficiaries" in the Plan, as those terms are defined in the Employee Retirement Income Security Act (ERISA), at the time the residual assets vested in the participants in the Plan. We affirm.

I

On January 1, 1983, Republic–Franklin Incorporated, sponsor of the Plan, sold Republic–Franklin Insurance Company to Utica National Insurance Group (Utica). Republic–Franklin Incorporated then changed its name to Franklin Capital Corporation (Franklin Capital). Immediately prior to the sale, 115 employees of Republic–Franklin Incorporated were participants in the Plan.

Before and after the sale, the Plan was managed by the Plan Administrators. The Plan Administrators were also members of the Executive Committee of the Board of Directors of Republic–Franklin Incorporated, and then Franklin Capital. As a result of this sale, 102 employees of Republic–

Franklin Insurance became employees of Utica. 13 management employees remained with Republic–Franklin Incorporated, now Franklin Capital.

After January 1, 1983, the former Republic–Franklin Insurance employees were enrolled in Utica's pension plan. On January 14, 1983, the Plan Administrators effected a partial termination of the Plan by purchasing annuities for the 102 former employees of Republic–Franklin Insurance in the amount of their vested benefits. The majority of the annuities were actually paid for by January 27, 1983, but a few were not actually paid for until as late as December 5, 1983.

After the partial termination of the Plan, Franklin Capital said that it found the expenses for maintaining the Plan for 13 participants prohibitive, and thus decided to terminate the Plan. On July 20, 1983, Franklin Capital amended the Plan, so that assets remaining in the Plan after the distribution of vested benefits and termination of the Plan would not revert to Franklin Capital. Instead, these assets would be distributed to participants and beneficiaries in the Plan. This amendment was approved by the Pension Benefit Guaranty Corporation.

On July 31, 1983, the Plan was dissolved. On August 8, 1984, the remaining 13 employees received their vested benefits. The Plan, as amended, provided in relevant part:

> Upon the direction of the Administrator at any time, the Trustee shall liquidate the Trust Fund and shall distribute to each Participant, Former Participant and Beneficiary an amount equal to the value of his allocation *as of the date such liquidation is directed ....*

(emphasis added). The right to residual assets in the Plan thus vested in Plan participants at the time of the Plan termination. After the distribution of vested benefits to the 13 management employees, residual assets of about $1,400,000 re-

[*] The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of    Michigan, sitting by designation.

mained in the Plan and these residual assets were also divided among the 13 remaining management employees.

On August 28, 1987, some of the 102 employees terminated from the Plan brought suit under 29 U.S.C. § 1132 as a class action on behalf of all 102 employees against the Plan and the Plan Administrators. In an amended complaint filed December 16, 1988, the plaintiffs sought their proportionate shares of the residual assets remaining in the Plan after distribution of the vested benefits on August 8, 1984. The plaintiffs also sought relief against the Plan Administrators for their failure to administer the Plan in a non-discriminatory manner.

The discovery cut-off date was set for July 31, 1989. On May 25, 1989, the defendants filed a motion to dismiss the amended complaint, under Rule 12(b)(1), Fed.R. Civ.P. The plaintiffs filed a memorandum in opposition to this motion, and the defendants replied. On August 14, 1989, the district court considered the defendants' motion under Rule 12(b)(6), Fed.R.Civ.P., and granted the defendants' motion to dismiss, on the ground that the plaintiffs lacked standing to bring their claim under ERISA. The district court found that the plaintiffs were not "participants" or "beneficiaries" in the Plan, as those terms are defined in ERISA, at the time the right to residual assets vested in the Plan participants and beneficiaries, and thus the plaintiffs were not authorized by statute to maintain an action for benefits. In particular, the court found that plaintiffs had received all the benefits due them under the Plan by way of the purchased annuities, and thus ceased to be participants in the Plan. The plaintiffs appealed.

## II

The plaintiffs argue that the district court, without notice, looked beyond the allegations in the pleadings, namely to the Plan itself, to dismiss their case. Thus, the plaintiffs contend that the district court should have considered the defendants' motion to dismiss as a motion for summary judgment under Rule 56, and provided the plaintiffs with an opportunity to produce evidence outside the pleadings. The plaintiffs claim that they were prejudiced by the district court's failure to notify them to submit additional evidence, since they would have submitted evidence that not all the annuities were funded by the date of the Plan amendment.

We find that the district court did not look outside the pleadings, and thus properly considered the motion to dismiss under Rule 12(b)(6). The plaintiffs therefore had no right to submit additional material. In any event, the plaintiffs bore the responsibility of amending their pleadings on the basis of their belief as to the funding dates, based on the defendants' answers to interrogatories obtained late in discovery, and had sufficient time to do so. The district court did not err in failing to consider this evidence since it was not in the pleadings before the court. On the basis of those pleadings, which did not dispute that all annuities were funded by the date of the Plan amendment, the plaintiffs could have proven no set of facts that would have entitled them to judgment.

Rule 12(b) provides, in relevant part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The plaintiffs contend that the district court looked outside the complaint, but did not give them a reasonable opportunity to present outside material. We disagree.

We agree with the defendants that the plaintiffs incorporated the Plan into their amended complaint by quoting extensively from it. Thus, the language of the Plan, and the arguable meanings of its terms, were central to the plaintiffs' complaint, and were part of the pleadings before the district court. *See Fudge v. Penthouse International, Ltd.,* 840 F.2d 1012 (1st

Cir.), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988).

Although factual allegations must be taken as true, the court was not required to accept the plaintiffs' *legal* allegation that they were "participants" or "beneficiaries" in the Plan as true. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971). The court properly examined the terms of the Plan in regard to these allegations, and properly dismissed the plaintiffs' complaint under Rule 12(b)(6), Fed.R.Civ.P.

The plaintiffs also argue that they have been prejudiced by not having the district court consider that all the annuities may not have been funded by the July 31 Plan termination, and that thus some of the plaintiffs may have been "participants" in the Plan at the time the residual assets vested in Plan participants.

The plaintiffs served interrogatories on the defendants, and the defendants answered these interrogatories on July 27, 1989. The defendants' answer to Interrogatory No. 21 indicated that some of the annuities may not have been funded until December 5, 1983, which was after the date of the Plan termination. The discovery cut-off date was July 31, 1989, and the district court issued its opinion on August 14, 1989.

The plaintiffs, despite opportunities to do so, never put this information before the district court in their pleadings. The plaintiffs were certainly on notice that the district court was going to rule on the defendants' motion to dismiss on the basis of the pleadings, and they further knew that the pleadings before the court did not dispute that all the annuities were funded by the date of the Plan amendment. Indeed, the plaintiffs' first amended complaint suggested that all annuities *were* funded by the date of the Plan termination:

10. On July 20, 1983, Defendants Cook, Matchneer and Heller, acting in their capacity as members of the Executive Committee of the Board of Directors of Franklin Capital Corporation, adopted an amendment to [the Plan] that provided that any assets remaining in the Plan after termination would not revert to Franklin Capital Corporation. Contemporaneous with this amendment, Defendants Cook, Matchneer and Heller effected the final termination of [the Plan]. 12.[1] Thereafter, Defendants Cook, Matchneer and Heller, acting in their capacities as Administrators of [the Plan] directed the final distribution of the assets of [the Plan]. At the direction of these Defendants, *the 13 remaining Participants* in [the Plan] received not only their accrued vested benefits (approximately $600,000.00) but also all remaining assets in [the Plan] (an additional $1.5 million). On October 23, 1984, Defendant [Plan] provided information to the Pension Benefit Guaranty Corporation regarding the manner and amount of distribution.

(emphasis added). The plaintiffs suggest that the Plan had "13 remaining Participants" at the time the rights to the residual assets vested in Plan participants. This statement fails to allege that any annuities were unfunded by the date of the Plan termination.

The plaintiffs had at least two methods for presenting information on the delay in annuity funding. The plaintiffs cannot now claim that the district court erred when they did not avail themselves of either of these methods. The plaintiffs could have amended their complaint a second time, to add an allegation that not all the annuities were funded by the date of the Plan termination. Rule 15(a), Fed.R.Civ.P., provides that,

a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Thus, the plaintiffs, after discovering that not all the annuities had been funded by July 31, 1983, the date of the Plan termination, could have amended their complaint to account for this information. The plaintiffs also could have brought this information to the attention of the district court by

---

1. The first amended complaint has no paragraph 11.

supplementing their memorandum opposing the defendants' motion.

Plaintiffs had over a month and a half between the date the defendants completed the interrogatories and the date the district court handed down its opinion. They had an approximately equivalent amount of time between the cut-off date of discovery and the date of the district court's opinion. The plaintiffs thus had sufficient time to bring this information to the district court's attention. The plaintiffs, however, failed to do so, and the district court properly ruled on the complaint pursuant to Rule 12(b)(6) on the basis of the pleadings before it.

### III

In dismissing the plaintiffs' complaint, the district court found that they were not "participants" or "beneficiaries" under the Plan at the time the residual assets vested in Plan participants, and thus had no standing to seek a proportionate share of these assets. On appeal, the plaintiffs contend that they have a "colorable claim" to a proportionate share of the residual assets in the Plan, and thus have standing to pursue their claim. We agree with the district court that the plaintiffs do not have a "colorable claim" to the residual assets, and thus affirm the district court's dismissal of their complaint.

The plaintiffs brought their action under 29 U.S.C. § 1132(a)(1)(B), which allows for recovery of benefits due under a plan. The Plan in question provided in relevant part:

> Upon the direction of the Administrator at any time, the Trustee shall liquidate the Trust Fund and shall distribute to each Participant, Former Participant and Beneficiary an amount equal to the value of his allocation *as of the date such liquidation is directed* ....

(emphasis added). Thus, it is clear from this provision that rights to residual assets vest in Plan participants only at the time the Plan is terminated.

Only "participants" and "beneficiaries," as those terms are defined under ERISA, have standing to pursue claims for benefits under 29 U.S.C. § 1132(a)(1)(B). 29 U.S.C. § 1132(a)(1).

> Under ERISA, "participant" means
>
> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). "Beneficiary" means

> a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(8).

In *Firestone Tire and Rubber Co. v. Bruch,* the Supreme Court elaborated on the definition of participant, stating:

> In our view, the term "participant" is naturally read to mean ... former employees ... who have "a colorable claim" to vested benefits. In order to establish that he "may become eligible" for benefits, a claimant must have a colorable claim that (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

489 U.S. 101, ——, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989) (citations omitted). Thus, by virtue of their assertion that they are "participants" in the Plan, the plaintiffs argue that they have standing in this case.[2] We disagree.

---

**2.** The Plan provides benefits for a "Former Participant," a term that is not defined or mentioned in ERISA. *See generally* 29 U.S.C. § 1002.

The Plan defines a "Former Participant" as an Employee or former Employee who was previously a Participant, whose participation in the Plan has ceased, and whose Period of

Vesting Service and Period of Benefit Service is not disregarded.

We find that this definition of a "Former Participant" in the Plan is identical to the definition of a "Participant" under ERISA, particularly in light of *Bruch,* which defines a Participant as, *inter alia,* a former employee with a "colorable claim" to vested benefits he has not yet received. Thus, we consider our discussion of participants

Simply asserting that one is a participant is insufficient to gain standing to pursue benefits. Indeed, the Supreme Court in *Bruch* stated:

> To say that a "participant" is any person who claims to be one begs the question of who is a "participant" and renders the definition set forth in § 1002(7) superfluous.

489 U.S. 101, ——, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989). Explicit in the Supreme Court's definition of "participant" in *Bruch* is a requirement that the plaintiffs prove either that their right to assets has "vested" or will "vest." The plaintiffs cannot prove in this case that their right to the residual assets has vested or will vest, because they were terminated from the Plan before the residual assets vested in remaining Plan participants.

Justice Scalia, concurring in the result in *Bruch*, wrote:

> I think that, properly read, the definition of "participant" embraces those whose benefits have vested, and those who (by reason of current or former employment) have some potential to receive the vesting of benefits in the future, *but not those who have a good argument that benefits have vested even though they have not.*

109 S.Ct. at 959 (Scalia, J., concurring) (emphasis added). Quite simply, in this case, the residual assets remaining in the Plan after the August 8, 1984 distribution vested only in those participants (and their beneficiaries) who were participants in the Plan at the time of the Plan termination on July 21, 1983.

The plaintiffs, and the class they purport to represent, ceased to be participants in the Plan in January 1983, at the time of the partial termination of the Plan based on the purchase of annuities for them. The Plan purchased annuities for the plaintiffs in the amount of their vested benefits; in this regard, we note that the Department of Labor regulations interpreting ERISA specifically exclude from the definition of "participant" "an individual to whom an insurer has made an irrevocable commitment to pay all the benefits to which the individual is entitled under the plan." 29 C.F.R. § 2610.2 (1989). Similarly, the Fifth Circuit has held that the definition of "participant"

> excludes retirees who have accepted the payment of everything due them in a lump sum, because these erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments.

*Joseph v. New Orleans Electrical Pension & Retirement Plan,* 754 F.2d 628, 630 (5th Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985). The plaintiffs here have also "accepted the payment of everything due them" under the Plan at the time their participation in it terminated, albeit in the form of an annuity and not in a lump sum. They are due no more benefits. Thus, in no respect can any of the residual assets be characterized as being "vested" in the plaintiffs.

The plaintiffs cite two cases in support of their claim that they have standing to pursue this claim. We are persuaded, however, that neither case is applicable to this action. In *Amalgamated Clothing & Textile Workers v. Murdock,* 861 F.2d 1406 (9th Cir.1988), plaintiffs sued for a proportionate share of residual assets that had not vested in them. These residual assets had collected in the plan as a result of the plan fiduciary's greenmailing activities.

The theory behind the holding in *Amalgamated Clothing* is inapplicable to this case. The Ninth Circuit "equitably" vested residual assets in plan participants to allow these participants to seek legal recourse against the plan fiduciaries, in an effort to combat illegal activities of plan administrators:

> In the circumstances of this case, were we to hold that payment of plan benefits cuts off the standing to sue of plan beneficiaries, we would, in effect, be saying that a fiduciary who (1) breaches the duty of loyalty to an ERISA plan, and (2) seeks to profit personally from that breach by terminating the plan, has the

in the Plan to encompass the Plan's definition of

"Former Participant."

power to deprive plan beneficiaries of standing to sue the fiduciary for misuse of the plan assets. *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1418 (9th Cir.1988). We see no similar misuse of Plan funds in this case. The residual assets were not created by greenmail or other illegal means, nor have the plaintiffs claimed that they were. Rather, these residual assets apparently existed as a result of the sale of Republic–Franklin Insurance Company.

In support of their argument that *Amalgamated Clothing* is applicable to this case, the plaintiffs contend that the Plan Administrators breached their fiduciary duty by terminating them from the Plan, and then amended the Plan to vest the right to receive residual assets in the remaining 13 Plan participants. However, this allegation does not go to misuse of Plan *funds*, funds that were held in trust for Plan participants, but rather impropriety in the Plan management. This distinction takes the plaintiffs' allegations out of the realm of the *Amalgamated Clothing* holding. Accordingly, we refuse to extend the holding in *Amalgamated Clothing*, which was a "limited" one by that court's own admission, to the present situation.

Without commenting on the plaintiffs' breach of fiduciary duty claim, we note that, in amending the Plan, the Plan Administrators did not violate any express term of the Plan. The *Amalgamated Clothing* court pointed out that the reversion of residual assets to the company did not, absent misuse of plan assets, constitute a violation of ERISA. *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1419 (9th Cir.1988). If residual assets may properly revert to the company, we see no reason why they may not revert to plan participants as well.

The plaintiffs also point to an unpublished decision of this court in *Rosenbaum v. Davis Iron Works*, [871 F.2d 1088 (Table) ] (6th Cir.1989), in support of their position. In that case, the plaintiff was a retiree, whose lump sum benefit payment was kept in a segregated account maintained by the plan. *Rosenbaum*, slip op. at 3. The plaintiff sued the plan's sponsor for additional benefits he claimed were due under the terms of the plan.

The *Rosenbaum* court noted that the plaintiff had a claim for benefits under the terms of the plan, stating:

> Even someone who has ostensibly received all his benefits should be able to sue in a case such as this because the suit is for benefits the claimant was allegedly entitled to under the plan. Any other ruling would allow plan administrators to take benefits from plan recipients and then become immune to suit by paying beneficiaries *some* of the benefits to which they were entitled, while falsely representing that the amount paid was the full amount of benefits due.

*Rosenbaum*, slip op. at 7 (emphasis added).

The plaintiffs in this case similarly argue that they have an entitlement to benefits under the Plan. As Justice Scalia noted in *Bruch*, however, this allegation of entitlement must have some basis in the Plan itself: "participants" do not include "those who have a good argument that benefits have vested even though they have not." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, ——, 109 S.Ct. 948, 959, 103 L.Ed.2d 80 (1989) (Scalia, J., concurring). The plaintiffs in this case cannot demonstrate entitlement to residual assets under the terms of the Plan. Not until the July 31 termination of the Plan did rights to the residual assets vest in participants of the Plan; by this date, the plaintiffs were no longer participants, since they received *all benefits* that they were due under the Plan *at the time their participation in the Plan terminated*, unlike the plaintiff in *Rosenbaum* who had received, at most, only *some* of his benefits. It is of no consequence to the plaintiffs that the Plan was later amended to vest rights to residual assets in Plan participants at the time of the Plan termination.

Plaintiffs argue that the July 20, 1983 amendment to the Plan was retroactive to January 1, 1980. This contention, however, does not help their case. Rights to the residual assets, regardless of the date of amendment, vest in Plan participants only as of the date of the Plan termination.

The plaintiffs in this case are not beneficiaries. As the district court pointed out, and we agree, the rights of beneficiaries are derivative from the rights of participants. Since the plaintiffs are not participants, they are not beneficiaries. We find nothing in the Plan that designates plaintiffs as beneficiaries, nor is there any allegation that any participants in the Plan at the time of its termination have designated plaintiffs to be their beneficiaries.

The result we reach in this case is compelled under the applicable law. We recognize that the actions of the Plan Administrators may appear to constitute unjust enrichment and that the plaintiffs appear to have been deprived of benefits that would have been theirs had the Plan been terminated earlier. However, ERISA simply does not give to persons in the plaintiffs' position standing to contest such actions, and since the Administrators were not guilty of unlawful conduct in pursuing the course they did, we have no basis to disturb the result.

Accordingly, the judgment of the district court is AFFIRMED.[3]

---

**3.** On appeal, the defendants contend that money damages cannot be recovered from the Plan Administrators under the cause of action asserted by the plaintiffs. In addition, the appellees have moved to dismiss unnamed appellants, because the notice of appeal in this case listed appellants only as "Donna Teagardener, et al." In light of our holding that the plaintiffs do not have standing in this case, however, we find it unnecessary to address these claims.