HEALTH COST CONTROLS, Plaintiff,

v.

Erma WARDLOW, Stephen L. Hixson, Cuna Mutual Insurance Company, and Farm Bureau Insurance Company, Defendants.

No. C92–0012–BG.

United States District Court,
W.D. Kentucky,
Bowling Green Division.

June 30, 1993.

Gregory Neil Stivers, Campbell, Kerrick & Grise, Bowling Green, KY, David A. Belofsky, Chicago, IL, for plaintiff.

Penny Travelsted, Hixson, Downey & Travelsted, Bowling Green, KY, for Irma Wardlow and Stephen L. Hixson.

Jack E. Ruck, Ruck, Wilson & Cooper, Louisville, KY, for CUNA Mut. Ins.

Timothy L. Mauldin, Bell, Orr, Ayers & Moore, Bowling Green, KY, for Farm Bureau Ins.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff, Health Cost Controls ("HCC"), requests summary judgment in its effort to

gain reimbursement of health insurance benefits it advanced to Defendant Wardlow. Defendants Wardlow and Hixson dispute HCC's right to reimbursement, and request summary judgment in their own right. Because Defendants' contractual rights are clear and there are no disputed issues of material fact to resolve and because HCC cannot claim an equitable right to recovery under the circumstances presented by this case, the Court will grant Defendants' Motion and will accordingly dismiss the lawsuit.

## I. BACKGROUND

■ Finis Wardlow worked for Colt Industries and participated in his employer's group health insurance plan. Colt Industries funded its plan through an insurance policy purchased from the CNA Insurance Company, represented in this lawsuit by its agent, HCC. Finis Wardlow's wife, Defendant Erma Wardlow, suffered a broken neck in a 1988 automobile accident caused by negligent third parties. She requested and received over $12,000 in health plan benefits from CNA. The health plan expressly forswore any coverage for injuries caused by a third party's tortious acts. The original policy contained an exception, however, which authorized payments by CNA if the insured consented in writing to reimburse CNA from any legal judgment recovered from the responsible party.[1] Defendant Wardlow never received or signed such an agreement, however; indeed, her copy of the insurance policy apparently omitted the reimbursement provision altogether.[2] CNA advanced the requested funds despite the absence of a reimbursement agreement.

Defendant Wardlow successfully prosecuted a claim for damages in Kentucky state court against the parties responsible for her injuries, ultimately receiving an award in excess of $150,000. HCC became aware of Wardlow's pending lawsuit in January, 1990, and for the first time asked her to sign a reimbursement agreement. (Defs.' Mot. for Summ.J., Ex. 1.) Defendant Wardlow disputed HCC's right to a share of her judgment, and refused to sign the reimbursement form. HCC later sought to enforce its claim against Wardlow's judgment by notifying Wardlow and three other parties controlling the awarded funds—Defendant Hixson, who was Wardlow's attorney in the civil suit, and Defendants Farm Bureau and CUNA Insurance Companies—of an asserted lien against those funds. This attempt at reimbursement also proved futile.

HCC now asks this Court to enforce the CNA policy's reimbursement term, or in the alternative to declare that HCC enjoys an equitable right to reimbursement under federal common law.

## II. SUBJECT MATTER JURISDICTION

The group health insurance plan linking HCC and Defendant Wardlow was an "em-

---

1. The policy specifically provided that "[n]o benefits will be paid under any coverage of the policy with respect to an Injury or Sickness for which a Third Party may be liable or legally responsible. However, the Company will pay benefits according to the terms of the policy on the condition that: 1. The Covered Person ... agrees in writing ... immediately after payment: (1) To give the Company written notice whenever a claim against a Third Party or an insurer of the Third Party is made for damages ... and (2) To reimburse the Company ... for any benefit paid by the Company when a recovery is obtained from the Third Party or the insurer of the Third Party...." (Complaint ¶ 14; Pl.'s Mot. for Summ.J. at 2.)

2. Defendant Wardlow contended as early as 1990 that her copy of the health care policy said nothing regarding CNA's asserted right to reimbursement. (Defs.' Mot. for Summ.J., Ex. 2 and Ex. 7.) Defendants Wardlow and Hixson have reiterated that contention more recently, by affi-

davit. (*Id.*, Affid. of Hixson.) As explained more fully below, CNA's failure to provide notice of this reimbursement provision may prevent the enforcement of that provision under Kentucky law. (*See also id.* at 6, n. 3.) Though aware of Defendants' allegation and the possible consequences of such lack of notice, Plaintiff has presented no evidence that CNA ever provided Wardlow with a copy of the reimbursement language. Plaintiff instead offers only the conclusory statement that "HCC contends in opposition that ... the Plan did in fact provide Wardlow with a complete copy of the reimbursement provision prior to payment of benefits." (Pl.'s Mot. for Summ.J. at 16–17.) HCC cannot simply "rest upon the mere allegations or denials of [its] pleadings"; it must instead "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). HCC has not provided such evidence; Defendants' contention regarding lack of notice shall therefore be considered an undisputed fact.

ployee welfare benefit plan" governed by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1002(1)(A). HCC's ability to obtain its desired reimbursement, and this Court's jurisdiction over HCC's suit, depend on whether ERISA grants HCC a cause of action providing such relief. *Whitworth Bros. Storage Co. v. Central States*, 794 F.2d 221, 225, n. 3 (6th Cir.1986) (*Whitworth I* ) (if party states claim pursuant to 29 U.S.C. § 1132(a), federal court has jurisdiction pursuant to § 1132(e)).

█ A health plan's fiduciary enjoys a broad right under ERISA to obtain "appropriate equitable relief ... to enforce ... the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii); *see also Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988, n. 5 (4th Cir.1990). HCC appears to merit the status of fiduciary as defined by ERISA. 29 U.S.C. § 1002(21)(A)(i). The Sixth Circuit furthermore recognizes a federal common law cause of action for lawsuits "premised on the contractual obligations created by ERISA plans", including litigation advancing an equitable claim for restitution. *Whitworth I*, 794 F.2d at 235–36. Such actions arise under federal common law and are entitled to federal jurisdiction under 28 U.S.C. § 1331. *Id.* at 236.

### III. HCC'S FAILURE TO INTERVENE IN PRIOR LAWSUIT

█ HCC learned of Defendant Wardlow's efforts to sue the wrongdoers responsible for her injuries while that lawsuit was pending in the Kentucky state courts. Defendants contend that HCC's failure to intervene in that lawsuit caused Plaintiff to forfeit any subrogation claim it might have against Defendant Wardlow's judgment. HCC responds that ERISA preempts the Kentucky statute relied upon by Defendants, and concludes that its failure to intervene cannot result in the loss of its right to reimbursement.

Kentucky law declares that, upon the commencement of a suit for damages,

it shall be the duty of the plaintiff or his attorney to *notify, by certified mail,* those parties believed by him to hold subrogation rights to any award received by the plaintiff as a result of the action. The *notification shall state* that a failure to assert subrogation rights by intervention, pursuant to Kentucky Civil Rule 24, will result in a loss of those rights with respect to any final award received by the plaintiff as a result of the action.

Ky.Rev.Stat. (KRS) 411.188(2) (emphasis added).

Defendant Hixson has sworn that he "did *not* notify [CNA] of the existence of the injury claim" at the commencement of Wardlow's tort litigation. (Defs.' Mot. for Summ. J., Affid. of Hixson at ¶ 2 (emphasis added).) At no time did Defendants Wardlow or Hixson inform CNA, by certified mail, that Rule 24 required CNA to intervene or lose its subrogation rights. Indeed, Defendants have consistently *denied* the existence of any subrogation rights held by CNA. (*Id.*, Affid. of Hixson at ¶ 4 and Ex. 2.) Although the Kentucky courts have not expressly insisted on strict compliance with KRS 411.188, the Kentucky Supreme Court has suggested that a subrogation-claimant may deserve protection from that statute in the event a plaintiff fails to provide formal notice of a tort claim for damages. *See Ohio Casualty Ins. Co. v. Ruschell*, 834 S.W.2d 166, 171 (Ky.1992).[3] Indeed, given the severe penalty exacted when an insurance company fails to comply with KRS 411.188(2), it seems only fair to insist that the beneficiaries of that statute strictly fulfill the law's minimal requirements.

It is therefore unnecessary for this Court to determine whether ERISA pre-empts KRS 411.188(2), or indeed whether a statute

3. The insurance company in *Ruschell* sought to avoid liability to its insured by contending that the insured had failed to provide notice of her earlier lawsuit by certified mail, as required by KRS 411.188(2). *Ruschell*, 834 S.W.2d at 166–67. The Supreme Court concluded that KRS 411.188(2) did not apply to no-fault carriers like the insurance company in *Ruschell*. *Id.* at 170.

The Court suggested, however, that where KRS 411.188 *does* apply, the statute might properly require an insured "to provide formal notice ... when filing a tort claim for damages", and might further grant the insurance company "some type of protection ... (or reasonable penalty)" if the insured failed to give such formal notice. *Id.* at 171.

stripping an insurance company of "subrogation" rights should apply at all to a claim which asserts "reimbursement" rights. Defendants Wardlow and Hixson simply did not comply with KRS 411.188(2) in the first instance, and cannot claim its protection now.

## IV. HCC'S CONTRACTUAL RIGHT TO REIMBURSEMENT

HCC insists that an express provision in Defendant Wardlow's insurance policy requires her to reimburse HCC. Kentucky law bars HCC from enforcing that contract term, however. Furthermore, HCC's own conduct waived the protection of the reimbursement provision it now wishes to enforce.

 Federal law permits this Court to enforce any valid term in a contract governed by ERISA. *Whitworth I,* 794 F.2d at 235–36. Kentucky law mandates that all terms in a health insurance contract be plainly expressed and furnished to the insured. KRS 304.14–180(2) *and* 304.18–080(2). Kentucky's highest court has declared that "[n]otice of limitations to the insurance coverage provided an insured is a fundamental policy of this commonwealth." *Breeding v. Massachusetts Indem. & Life Ins.,* 633 S.W.2d 717, 720 (Ky.1982); *see also Twin City Fire Ins. Co. v. Terry,* 472 S.W.2d 248, 250 (Ky.1971). The Sixth Circuit has acknowledged Kentucky's emphatic requirement that the certificate of insurance carry all applicable policy limitations. *Hale v. Life Ins. Co. of N. America,* 750 F.2d 547, 550 (6th Cir.1984). HCC never informed Defendant Wardlow of the existence of its reimbursement provision. Therefore, this Court cannot enforce Plaintiff's claims under Kentucky law.[4]

 Nor does ERISA preclude the application of these state disclosure laws to the plan at issue in this lawsuit. ERISA concededly pre-empts all state laws, such as those described above, which "relate to any employee benefit plan." 29 U.S.C. § 1144(a). That sweeping pre-emption is tempered by an equally-broad "saving clause" which preserves "any law of any State which regulates insurance". § 1144(b)(2)(A). The saving clause therefore acts to permit the enforcement of state laws which "directly control[ ] the terms of insurance contracts" and are "aimed at" the insurance industry. *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990); *see also Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987) (saving clause preserves state laws "specifically directed toward" the insurance industry) *and Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 742–43, 105 S.Ct. 2380, 2390–91, 85 L.Ed.2d 728 (1985) (clause preserves state laws that regulate the substantive terms of insurance contracts). The Kentucky insurance statutes clearly satisfy these criteria, and therefore apply to the policy HCC seeks to enforce.[5]

 Even if HCC's reimbursement provision were to survive the application of Kentucky law, the provision cannot overcome HCC's own conduct. HCC's reimbursement term expressly conditioned medical coverage for Defendant Wardlow's injuries upon her agreement, in writing, to repay HCC from any legal damages award. HCC had the means of protecting itself, and possessed the commercial sophistication to understand the need to enforce its contract rights, but chose not to ask Defendant Wardlow to consent to a reimbursement provision until long after payment had been made. HCC intentionally relinquished a known right, and thereby waived the protection of its reimbursement

---

**4.** Kentucky's law appears to be entirely consistent in this respect with ERISA's own disclosure requirements. *See* 29 U.S.C. § 1022(a)(1) *and Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136 (6th Cir.1988).

**5.** The applicability of these Kentucky statutes is not affected by ERISA's "deemer clause." That clause prevents the enforcement of state laws against *self-funded* ERISA plans, even when those state laws qualify for the protection of the saving clause. 29 U.S.C. § 1144(b)(2)(B); *Holli-*

*day,* 498 U.S. at 61, 111 S.Ct. at 409. The law defines "self-funded plan" as one which is uninsured, *i.e.* one which "does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants." *Id.* at 54, 64–65, 111 S.Ct. at 405, 411. Plaintiff suggests that the ERISA plan under investigation here was "self-insured", but concedes that "the Plan sponsor [Colt Industries] purchased a policy of insurance to fund the Plan." (Pl.'s Mot. for Summ.J. at 8.)

provision. *American Locomotive Co. v. Chemical Research Co.*, 171 F.2d 115, 121 (6th Cir.1948).

## V. AVAILABILITY OF RESTITUTION

HCC contends that the principles of equity applicable to all ERISA contracts mandate the reimbursement it seeks. Defendant Wardlow received payment for her medical costs from one source, HCC observes, and then collected a tort judgment for the same medical costs from another source. HCC concludes that Defendant Wardlow has enjoyed the windfall of a double recovery for a single injury, and insists that permitting Defendant to retain those benefits is incompatible with fairness and the policies underlying ERISA.

■ It cannot be doubted that, under appropriate circumstances, an equitable remedy of restitution exists under ERISA to redress unjust enrichment. The Sixth Circuit recently approved a common law cause of action in restitution to permit an employer to recover mistaken contributions to an ERISA fund. *Whitworth Bros. Storage Co. v. Central States*, 982 F.2d 1006, 1017–18 (6th Cir.1993) (*Whitworth II* ).

■ The Sixth Circuit has not yet created an unjust enrichment remedy allowing an insurance company to recover payments made to an ERISA plan participant. The court has declared, however, that "achieving equity can work in aid of pension funds as well as for the employers who contribute to them", and has acknowledged that "our recognition of a common law cause of action in restitution to prevent unjust enrichment can also be a boon for pension funds." *Whit-*

worth II, 982 F.2d at 1018. Such comments suggest that the Sixth Circuit would extend ERISA's equitable protections to insurance companies under the appropriate circumstances. This supposition finds additional support in the Sixth Circuit's express recommendation of the opinion contained in *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.1990), in which the Fourth Circuit authorized a restitution remedy to help an insurance company which had administered an ERISA plan. *Whitworth II*, 982 F.2d at 1018.

The Fourth Circuit's analysis in *Waller* is particularly significant in the present context, since that opinion permitted an ERISA fund to reclaim payments made to a plan participant under circumstances quite similar to those appearing in this lawsuit.[6]

This Court believes that, under appropriate circumstances, the Sixth Circuit would follow the analysis described in *Waller* and would extend ERISA's restitution remedy to grant protection to insurance companies unfairly exploited by their beneficiaries. However, this Court is equally confident that the facts presented by this lawsuit do not justify extending such relief to HCC, even though the facts here resemble the circumstances which prompted a different conclusion in *Waller*.

Fundamental to a decision granting restitution is a determination that the defendant has obtained benefits by improper means. Thus, for example, the Sixth Circuit has approved an equitable remedy to prevent a pension fund from enjoying a "windfall" by retaining mistaken ERISA contributions while acknowledging no offsetting obligation

---

**6.** The defendant in *Waller* enjoyed medical coverage under his employer's self-funded ERISA plan. *Waller*, 906 F.2d at 986. After he suffered an injury in an automobile accident, the defendant requested and received payments for his medical expenses from the insurance company which administered the plan. *Id.* That plan expressly required a participant injured by a third party to sign an agreement promising to repay the fund in the event the participant recovered a judgment from the responsible wrongdoer. *Id.* The defendant was never asked to sign such an agreement and he did not volunteer to do so, even though he was familiar with the plan's reimbursement provision. *Id.* at 986, 993.

The defendant later refused to reimburse the insurance company after he obtained damages from the person who caused his injuries. *Id.* at 986. The Fourth Circuit declared that the defendant had been unjustly enriched by having "received a double recovery *despite knowing about the plan's reimbursement provision,* and despite the absence of a requirement that [the insurance company's] payment be made in the first place." *Id.* at 993. [Emphasis added.] The court announced that a restitution remedy should be available under ERISA to assure that "a party ... not be allowed to profit from its own wrongs" and to encourage employers to continue operating ERISA plans. *Id.*

to pay pension benefits. *Whitworth II,* 982 F.2d at 1017. The Sixth Circuit similarly approved an assessment of prejudgment interest to thwart a retirement fund's attempt to retain the benefit it acquired by wrongfully denying payments to a beneficiary. *Sweet v. Consolidated Aluminum Corp.,* 913 F.2d 268, 270 (6th Cir.1990). But the Sixth Circuit has refused to grant an equitable remedy where an insured has done nothing wrong. Thus the court declined to interfere in the decision by an ERISA pension plan to distribute over a million dollars in residual assets to a few management employees where the plan administrators "were not guilty of unlawful conduct in pursuing the course they did", even though the court acknowledged that the administrators' conduct "may appear to constitute unjust enrichment...." *Teagardener v. Republic–Franklin Inc.,* 909 F.2d 947, 948, 954 (6th Cir.1990). The *Teagardener* court carefully distinguished cases in which equitable remedies were necessary to prevent actual or potential illegal conduct, such as greenmailing or false representations. *Id.* at 952–53.

Defendant Wardlow engaged in no unjust conduct. She did not obtain her medical benefits by deceit. She simply requested payment from HCC and received it. Quite unlike the beneficiary in *Waller,* Defendant Wardlow had no knowledge of HCC's asserted right to reimbursement when she received her medical benefits. When HCC finally mounted its belated attempt to recover its payments, Defendant Wardlow acted legally and reasonably by refusing to make such reimbursement in the absence of a contractual requirement that she do so. And though the record does not describe in detail Defendant Wardlow's injuries, it is quite probable that the medical treatment for her broken neck far outstrips the combined value of her insurance payments and her tort award; only in the most abstract and unrealistic sense is it likely that Defendant Wardlow has enjoyed the "windfall" of a "double recovery."

█ Nor is an equitable remedy necessary to assure the financial stability of ERISA plans. True financial stability of those plans depends more upon the enforcement of appropriate contract terms than upon the availability of equitable causes of action designed to produce the same result.

█ It seems equally clear that an equitable remedy in this lawsuit would not measurably advance the policy of encouraging employers to fund ERISA plans. Denial of restitution to HCC, for example, would not place the risk of unjustified loss on the employer of Defendant Wardlow's husband, and would not deter that employer from funding its ERISA benefit plan in the future. *See Whitworth II,* 982 F.2d at 1014, *citing Jamail Inc. v. Carpenters District Council,* 954 F.2d 299, 304 (5th Cir.1992). This Court cannot conclude that a restitution remedy for HCC is necessary to encourage steady contributions by employers to their ERISA plans.

HCC in essence asks this Court to do, in equity, what HCC failed to do under its own contract. Yet this Court is hesitant to revive, in the name of fairness, lapsed or unenforceable contract terms. Provisions appearing in a contract, and the conduct occurring under that contract, are entitled to respect, and should not be pushed aside in a rush to accomplish an assertedly equitable result. The Sixth Circuit has noted in this context that the availability of an equitable remedy may be restricted by a clear contractual limitation, though such limitation is not invariably fatal to a restitution claim. *Whitworth II,* 982 F.2d at 1013, 1017. The Fourth Circuit in *Waller* likewise noted that an unjust enrichment doctrine is inappropriate where it would override a contractual provision in an ERISA plan. *Waller,* 906 F.2d at 992–93. Requiring restitution here would produce a dual inequity: overriding Defendant's reliance upon contract terms and at the same time undoing HCC's *waiver* of other terms. Surely reasonable people would object if this Court refused to enforce a viable reimbursement agreement in the name of equity; the same should be true when the Court is asked to create an agreement where none exists.

HCC's claim to reimbursement cannot be maintained under the circumstances, and its liens securing that reimbursement must also fail. The Court will dismiss HCC's suit by

an Order consistent with this Memorandum Opinion.

### ORDER

This matter is before the Court for consideration of cross-motions for Summary Judgment filed by Defendants Wardlow and Hixson and by Plaintiff. The Court having thoroughly reviewed this matter, having set forth its findings in a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment shall be **GRANTED,** and that Plaintiff's cause of action shall accordingly be **DISMISSED.** This is a final and appealable Order, and there is no just cause for delay.