25 F.3d 1050
 RICO Bus.Disp.Guide 8606
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David STRASSMAN, et al., and Victor Wexler, Plaintiffs-Appellants,
v.
ALMAHURST, INC.; P.J. Baugh; P.J. Baugh Industries, Inc.;
Prudential-Bache Securities, Inc.; Prudential-Bache
Agriculture, Inc.; KPMG Peat Marwick; Almahurst
Bloodstock; Almahurst Bloodstock II; Almahurst Bloodstock
III; Almahurst Bloodstock IV; Almahurst Bloodstock V;
Defendants-Appellees.
R.D. Lester; Stoll Kennon & Park; First Security National
Bank & Trust Co.; Defendants.
 No. 93-5137.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1994.
 
 Before: RYAN and NORRIS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff David Strassman and 130 other individual plaintiffs appeal the district court's dismissal, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), of the plaintiffs' complaint, in which the plaintiffs charged the defendants with violations of section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, as well as with violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1961 et seq., and of state law. The district court dismissed the plaintiffs' federal claims as untimely. We agree.[1]
 
 I.
 
 2
 Between 1982 and 1985, the plaintiffs invested in excess of $7.8 million in five limited partnerships, formed to engage in the purchase, breeding, and sale of Standardbred horses. These partnerships were sponsored by defendants P.J. Baugh, Almahurst, Inc., and P.J. Baugh Industries, Inc., with Baugh and Almahurst, Inc. functioning as the general partners. Prudential-Bache Securities, Inc. and its affiliate, Prudential-Bache Agriculture, Inc., are named defendants here because of marketing and advisory services they performed on behalf of the partnerships. KPMG Peat Marwick is a named defendant because it reviewed the financial projections included in the partnerships' offering statements. The partnerships, Almahurst Bloodstock I, II, III, IV, and V, also are named defendants.
 
 
 3
 Five years after the final offering, 61 of the present plaintiffs filed suit in federal court in Massachusetts. Over the ensuing two years, the complaint metamorphosed through a transfer to the Eastern District of Kentucky, partial dismissal, and two amendments adding another 70 plaintiffs.
 
 II.
 
 4
 The plaintiffs first argue that the district court erred by requiring them to prove timeliness. Their argument is without merit. As we previously have held under similar circumstances, when it is clear on the face of pleadings alleging fraud, that a limitations problem exists, it is the plaintiff's burden "to plead circumstances which would indicate why the alleged fraud was not discovered earlier." Auslender v. Energy Management Corp., 832 F.2d 354, 356 (6th Cir.1987). Here, reading together the plaintiffs' complaint and the private placement memoranda through which the partnerships were marketed, as the district court was permitted to do, see Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 949 (6th Cir.1990), cert. denied, 498 U.S. 1027 (1991), the plaintiffs' limitations problem was evident.
 
 
 5
 We have held that a RICO claim accrues no later than the time a plaintiff discovers, or reasonably should have discovered, " 'both the existence and source of his injury and that the injury is part of a pattern.' " Agristor Fin. Corp. v. Van Sickle, 967 F.2d 233, 241 (6th Cir.1992) (citation omitted).[2] The predicate acts underlying the plaintiffs' RICO claim here--securities, wire, and mail fraud--all had the common objective of selling partnership interests, making discovery of the injury and the pattern virtually simultaneous. Moreover, all predicate acts occurred five or more years prior to the plaintiffs' pursuit of legal redress. Thus, without some basis for equitable tolling, the plaintiffs' claims were barred by the four-year limitations period in RICO actions, see Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 156 (1987), and the three-year statute of limitations applicable to these plaintiffs' section 10(b) claims under 15 U.S.C. Sec. 78aa-1(a).
 
 
 6
 The plaintiffs argue, however, that even if the district court properly imposed on them the burden of establishing timeliness, the question of when they had notice of the defendants' alleged fraud is, by its nature, a question of fact not amenable to Rule 12(b)(6) resolution. Again, the plaintiffs misconstrue their burden. Because their claims were facially untimely, it was incumbent on the plaintiffs to plead fraudulent concealment in order to avoid dismissal. Successful pleading of fraudulent concealment requires a plaintiff to articulate the defendant's wrongful concealment of the operative facts, the plaintiff's failure to discover these facts in a timely manner, and the "plaintiff's due diligence until discovery of the facts." Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir.1975). In addition,
 
 
 7
 " 'there must be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.' "
 
 
 8
 Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1465 (6th Cir.) (citation omitted), cert. denied, 488 U.S. 880 (1988).
 
 
 9
 Here, the plaintiffs made only the most conclusory attempt to meet their pleading burden, alleging that they "could not have discovered the untrue statements and omissions by the exercise of reasonable diligence until shortly before the filing of their claims in this action, or at the earliest 1988." As Pinney Dock teaches, the pleading of due diligence requires more than mere recitation of the phrase. Because we have no insight as to what occurred in 1988 that suddenly enabled the discovery of the alleged fraud, we have no measure as to whether, with due diligence, the discovery could have been made earlier.
 
 III.
 
 10
 For these reasons, we AFFIRM the district court's order dismissing the plaintiffs' complaint.
 
 
 
 [1]
 Because we find that the plaintiffs' claims were time-barred, we do not address the district court's alternative basis for dismissing the claims, under Rule 9(b)
 
 
 [2]
 This rule has been called the compromise rule. In Agristor, we also analyzed the plaintiff's claims under the more stringent discovery rule, and concluded that because his claim was time-barred under the "more generous" compromise rule, it necessarily was untimely under the discovery rule. 967 F.2d at 241. We also explicitly rejected the "last predicate act" rule recognized by some courts. Id